# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 12-77

PAUL MAGBEE

VERSUS

FEDERAL EXPRESS

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - District 04
PARISH OF LAFAYETTE, NO. 10-02816
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

## JIMMIE C. PETERS
## JUDGE

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters, Elizabeth A. Pickett, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

AFFIRMED IN PART AS AMENDED;
REVERSED IN PART; AND RENDERED.

**GREMILLION, J., concurs in part and dissents in part and assigns written reasons.**

Michael B. Miller
Jacqueline B. Maneke
P. O. Drawer 1630
Crowley, LA 70527-1630
(337) 785-9500
COUNSEL FOR PLAINTIFF/APPELLANT:
    Paul Magbee

**Foster P. Nash, III**
**Travis L. Bourgeois**
**Emily R. Adler**
**Degan, Blanchard & Nash**
**400 Poydras Street, Suite 2600**
**New Orleans, LA 70130**
**(504) 529-3333**
**COUNSEL FOR DEFENDANT/APPELLEE:**
        **Federal Express Corporation**

**PETERS, J.**

The plaintiff, Paul Magbee, appeals certain issues arising from a workers' compensation judgment which awarded him indemnity benefits and awarded or denied various medical treatments, tests, penalties and attorney fees. For the following reasons, we affirm the judgment in part as amended, reverse it in part, and render judgment on issues arising from the reversal.

## DISCUSSION OF THE RECORD

Mr. Magbee, a fifteen-year employee of Federal Express Corporation (FedEx), suffered a work-related injury on December 9, 2009, while attempting to open the hood of his delivery truck. At the time of the accident, he was standing in water, and his feet slipped out from underneath him as he raised his arms to lift the hood. Mr. Magbee fell backwards onto a cement floor, ending up flat on his back. The next day after the accident, Mr. Magbee was seen by Dr. Gregory Gidman, a Lafayette, Louisiana orthopedic surgeon, who was FedEx's choice of orthopedic surgeon. His numerous complaints at that time included neck, bilateral arm and leg, lower back, and thoracic spine pain. Dr. Gidman noted that Mr. Magbee complained of hurting from his posterior cervical spine down to the pelvic area and from his posterior arms down to his wrists and both legs, including his left knee.

Dr. Gidman also noted that Mr. Magbee's past medical history included being stricken with poliomyelitis (polio) at a very young age, an illness which left him with a shorter left leg as well as a left pelvic tilt; marked atrophy of that leg, thigh, and foot; and atrophy of the left arm, forearm, and hand. As a result of his physical difficulties arising from being stricken with polio, Mr. Magbee had undergone a triple arthrodesis of the left foot. Dr. Gidman also noted that Mr. Magbee received approximately seven months of treatment from a chiropractor for treatment of pinched nerves in his back and spine arising from a July 4, 2007 fall at

a Wal-Mart department store. The doctor also concluded that Mr. Magbee suffered no residual problems from that accident. X-rays of Mr. Magbee's cervical spine, taken by Dr. Gidman, revealed multilevel degenerative changes with narrowing and spur formation at the C3-4, 4-5, 5-6, and 6-7 levels. X-rays of his lumbar spine revealed bilateral pars defects at L5 and small spur body at L3-4.

After concluding his examination, Dr. Gidman reached the opinion that Mr. Magbee was suffering from an acute contusion or sprain of his entire spine and his upper and lower extremities. The doctor instructed Mr. Magbee regarding various therapies, such as soaks, rubdowns, heat, stretching, strengthening, and range of motion exercises, and told him to return on December 14, 2009.

When Mr. Magbee returned to Dr. Gidman, he complained of suffering from lower back and bilateral leg pain, headaches, and an aching, throbbing tailbone. He also informed Dr. Gidman that he was transferring his care to Dr. John Cobb, a Lafayette, Louisiana orthopedic surgeon, who had previously treated him.

Mr. Magbee initially saw Dr. Cobb for his injuries sustained in this accident on December 21, 2009. He related the particulars of the accident to Dr. Cobb, asserting that he suffered immediate pain throughout his body when he fell and that he struck his head when he came in contact with the concrete floor. However, he denied losing consciousness. During his examination, Mr. Magbee complained of a constant throbbing ache in his head, neck, and upper back, with pain radiating down into his shoulders, arms, and legs; numbness, burning, and tingling in his arms, hands, and feet; pins and needles in both hands; burning and tingling in his neck, face, and chest with sneezing or coughing; and increased pain with walking, bending, stooping, and sitting.

Dr. Cobb's records note that Mr. Magbee had a history of two previous accidents: the Wal-Mart accident in July of 2007; and a June 17, 1998 automobile

2

accident, wherein he sustained injuries to his neck and back and was treated in-house with physical therapy before being released. Dr. Cobb also noted Mr. Magbee's past history of polio at the age of five months, with the resulting left lower-extremity atrophy and pelvic hip tilt, left ankle surgery, and spina bifida. Dr. Cobb's office records further reflected Mr. Magbee's prior history of facet joint involvement at the L5-S1 level, without significant herniation.

Dr. Cobb concluded that Mr. Magbee was suffering from post-traumatic pain syndrome and a sprain or strain of the cervical and lumbar spine; a possible cervical disc-related condition, with no evidence of radiculitis; a possible lumbar herniated disc, without radiculitis; and a previous diagnosis of spondylosis, degeneration at C-5-6 and facet joint pain at L5-S1. Dr. Cobb recommended physical therapy for Mr. Magbee's cervical and lumbar spine and restricted him to light-duty work, with no lifting or driving.

When Mr. Magbee returned to Dr. Cobb on January 18, 2010, he complained to the doctor of constant headaches; anterior chest and neck pain; constant tingling in his hands and feet; pain in his fingers and aching in the joints; frequent urination and a change in his bowel movements; increased burning above his hips; pain and weakness in his legs, which prevented him from walking for any length of time; and cramping in his leg muscles. Mr. Magbee further told Dr. Cobb that although he had been released to light-duty work, FedEx had none available. Dr. Cobb's diagnoses (one month and nine days post-accident) was basically the same with the added diagnoses of possible carpal tunnel syndrome and/or ulnar nerve entrapment bilaterally. Dr. Cobb recommended MRIs of the cervical and lumbar spine, EMG and nerve conduction studies of both arms, and he discontinued the physical therapy.

3

On February 3, 2010, Bernadette Prevot, a case manager with Intracorp, Inc., notified Mr. Magee that she had scheduled him a March 3, 2010 appointment with Dr. Stanley Foster, a Lafayette, Louisiana orthopedic surgeon, at the request of FedEx's workers' compensation administrator, Sedgwick Claims Management (Sedgwick). Mr. Magbee did not keep this second medical opinion appointment.

At his February 22, 2010 appointment with Dr. Cobb, Mr. Magbee still complained of pain in his lower back and his left, and sometimes right, shoulder blade; burning across his lower back, radiating down into his legs and feet; numbness in both feet; and numbness and tingling in both hands. Dr. Cobb reviewed the results of a February 8, 2010 MRI of the cervical spine and noted that it revealed mild degeneration at C3-4, without significant stenosis or spondylosis, diffused spondylitic changes at C4-5, and minimal spondylosis without compression at C5-6. With regard to the lumbar MRI, Dr. Cobb noted that it revealed mild Scheuremann's disease and a mild disc bulge at L4-5. He attributed this latter finding to the degeneration process.

Dr. Cobb concluded that Mr. Magbee was not a candidate for surgery at this time and recommended continued physical therapy for his patient's cervical and lumbar spine and interlaminar epidural steroid injections at C6-7 and L4-5. The doctor felt that Mr. Magbee would reach maximum medical benefit from the physical therapy after approximately one month and that Mr. Magbee was physically able to perform light-duty work. He still recommended the EMG and nerve conduction studies of the upper extremities to rule out carpal tunnel syndrome and/or ulnar nerve entrapment.

On March 24, 2010, Mr. Magbee filed a disputed claim against FedEx and Sedgwick, alleging that the original weekly payment of $502.13 for workers' compensation indemnity benefits was too low, that the payment of his waiting

4

week benefits was untimely, and that he was entitled to penalties, attorney fees, and legal interest. Mr. Magbee later amended his claim to seek penalties and attorney fees based on FedEx's termination of his indemnity benefits on April 1, 2010, its failure to approve recommended medical treatment, its untimely payment of indemnity benefits, and its failure to timely provide him Dr. Gidman's medical reports.

On April 25, 2010, Mr. Magbee reported to Dr. Cobb that physical therapy had improved his balance although it had not significantly reduced the pain. At this appointment, he complained of headaches; neck pain; bilateral leg pain, worse in the left knee; increased pain with standing and walking; numbness in his hands and feet; and difficulty sleeping. Dr. Cobb's diagnosis remained the same, with the added diagnoses of a possible twisting or meniscus injury of the left knee. Dr. Cobb continued the physical therapy as before; ordered an MRI of the left knee; and restricted Mr. Magbee from working.

On June 14, 2010, Dr. Cobb noted that Sedgwick denied coverage for Mr. Magbee's left-knee complaints. During the examination on that day, Mr. Magbee complained of back and bilateral hip pain, with burning down into his hips and legs, worse since the physical therapy was discontinued; stiffness in his cervical spine; tingling in his hands, legs, and feet; and a stretching and tearing sensation in his left knee when bent. Concluding again that Mr. Magbee was not a surgical candidate for his lumbar complaints, Dr. Cobb reiterated his recommendation for physical therapy and an interlaminar epidural steroid injection at L3-4.

Ms. Prevot notified Mr. Magbee on July 12, 2010, that she had obtained another second medical opinion appointment for him, but this time with Dr. Gidman on August 24, 2010. In response to that notification, Mr. Magbee's counsel informed FedEx, by a July 16, 2010 letter, that Mr. Magbee would not

5

consider attending this appointment unless FedEx supplied him with information pertaining to the reason for the appointment and the name and specialty of the doctor performing the examination. After counsel for FedEx responded to this request, Mr. Magbee's counsel indicated that his client would keep the appointment. However, Mr. Magbee failed to keep the appointment.

On July 26, 2010, or approximately six months after his accident, Mr. Magbee reported to Dr. Cobb that his cervical complaint of numbness and tingling in his hands had improved; his back was somewhat better; his leg pain and tingling was less intense; and his left knee was better. Dr. Cobb felt that the physical therapy had improved Mr. Magbee's strength and balance, but noted Sedgwick's refusal to approve additional therapy. Dr. Cobb's diagnosis continued as before. Four months later, Mr. Magbee still complained to Dr. Cobb of neck pain, burning across his back and aching in his legs, tingling in his hands and feet, and pain in his tailbone; but stated that his left knee was somewhat improved. Dr. Cobb reiterated both recommendations for physical therapy and cervical and lumbar spine epidural steroid injections and restricted Mr. Magbee from working.

Based on Mr. Magbee's failure to keep the appointments with Dr. Foster and Dr. Gidman, FedEx filed a motion to compel him to attend a second medical opinion examination by a physician of FedEx's choice. After FedEx moved for an expedited hearing on its motion on October 2, 2010, counsel for Mr. Magbee evidently agreed that he would recommend to his client that he attend an examination with Dr. Gidman if FedEx would provide him with the doctor's patient-intake form for review and possible revision before the appointment. Counsel for FedEx responded by providing Mr. Gidman's counsel with the form. Mr. Magbee's counsel made some suggested revisions and returned the form to FedEx's counsel, who made the requested revisions and then returned the form to

6

Mr. Magbee's counsel on November 29, 2010, for final review. After more suggested revisions, Mr. Magbee's counsel returned the form on November 30, 2010. However, by this time Dr. Gidman had apparently grown dissatisfied with the process and refused to examine Mr. Magbee based on the requirement that he use the revised form.

The second medical opinion examination finally took place on February 14, 2011, when FedEx had Mr. Magbee examined by Dr. Joe Morgan, a Baton Rouge, Louisiana orthopedic surgeon. During the examination, Mr. Magbee complained of constant, mild, non-radiating pain in his lower back and hips and intermittent headaches nearly every day. He reported that his condition had improved since the accident, but that his pain varied daily. According to Dr. Morgan, on examination Mr. Magbee experienced slight limitation of motion to rotation and bending and mild tenderness at the extremes of rotation in the cervical spine. He also experienced mild tenderness in the left wrist on compression, tightness of the lumbosacral muscles, and tenderness in the medial joint line in his left knee.

After reviewing Mr. Magbee's x-rays, MRI reports, physical therapy records, Drs. Gidman and Cobb's medical records, Dr. Morgan concluded that Mr. Magbee was suffering from post-polio syndrome. He explained that polio leaves a person with fewer anterior horn cells, which are the nerves which supply the skeletal muscles in the trunk and extremities. Although these cells are lost naturally during the aging process, people with a history of polio began suffering those problems associated with older age, i.e., the atrophy of muscles in the trunk and extremities, at an earlier age. He stated that the hall-mark of post-polio syndrome is "increasing weakness in all muscle groups and pain in all muscle groups" as a result of losing these anterior horn cells. Dr. Morgan said that all of the pain Mr. Magbee is experiencing is characteristic of this condition. Although

7

he felt that Mr. Magbee had sustained a temporary lower-back injury, Dr. Morgan felt that this injury had resolved and that any restrictions he would place on Mr. Magbee's ability to work are a result of his post-polio syndrome and not his work-related accident.

When Dr. Cobb saw Mr. Magbee on March 23, 2011, his patient had continued complaints of neck, lower back, and bilateral hip pain; bilateral lower leg pain, with a throbbing sensation anteriorly; and numbness and tingling in his hands and feet. He indicated that his left knee was better. At this point, Dr. Cobb altered his diagnosis slightly in that he felt Mr. Magbee was then suffering from C4-5 spondylosis and a right paracentral disc bulge at C5-6, in addition to carpal tunnel syndrome bilaterally and/or ulnar nerve entrapment; minimal bulging and degeneration at L4-5, with facet enlargement; lumbar spine instability; left-knee medial meniscus injury; and bilateral radiculitis in the lower extremities. Once again, Dr. Cobb recommended the interlaminar epidural steroid injection at L3-4.

On May 2, 2011, the WCJ ordered Mr. Magbee to submit to an independent medical examination (IME) with Dr. Thad Broussard, a Baton Rouge, Louisiana orthopedic surgeon. This examination occurred on May 11, 2011, and during the examination, Mr. Magbee related to Dr. Broussard that his condition had improved since the accident. He denied suffering from radiating numbness, tingling, or pain in his lower extremities and radiating pain in his upper extremities, although he did complain of tingling in his hands. After examining Mr. Magbee and reviewing his medical history, Dr. Broussard concluded that Mr. Magbee was suffering from post-polio syndrome as well as cervical and lumbar spondylosis. Although he noted Mr. Magbee's multi-level spondylitic changes, Dr. Broussard felt that these changes predated the December 9, 2009 accident. He further stated that with

8

regard to the right-sided disc bulge at L3-4, he found no acute changes in the bony tissue.

Dr. Broussard was of the opinion that Mr. Magbee had reached maximum medical improvement but that, although he was capable of returning to work, he could not return to his courier job with FedEx. Dr. Broussard recommended that a functional capacity evaluation (FCE) be performed to determine Mr. Magbee's employment limitations and that he then undergo a vocational rehabilitation consultation. Dr. Broussard did not feel that epidural steroid injections were necessary in Mr. Magbee's case, since he exhibited no radicular findings in his lower extremities, and that although he found no need for further testing, he felt that Mr. Magbee might require continued symptomatic and supportive care and that his current complaints were only partly related to post-polio syndrome.

This matter went to a trial on the merits on July 7, 2011. Following the close of evidence, the WCJ rendered oral reasons for judgment finding that Mr. Magbee had suffered a work-related accident and that he was entitled to maximum weekly indemnity benefits in the amount of $577.00 instead of the original $502.13 weekly benefit paid by FedEx. The WCJ further held that Mr. Magbee was capable of performing light-duty work, but because FedEx could offer no light-duty work, awarded him supplemental earnings benefits at a zero earning capacity pursuant to La.R.S. 23:1221(3). The WCJ tempered this award by stating that Mr. Magbee's indemnity benefits could be reduced in the future if Mr. Magbee was earning wages or if FedEx could prove his wage earning capacity in any month. Finally, with regard to indemnity benefits, the WCJ held that all indemnity benefits owed to Mr. Magbee had been paid.

On the issue of medical treatment, the WCJ awarded Mr. Magbee additional physical therapy based on his testimony that his condition had improved with the

9

therapy. The WCJ denied his request for cervical and lumbar epidural steroid injections, finding that these were not necessary based on Dr. Broussard's opinion and Mr. Magbee's lack of radicular symptoms. Despite finding Mr. Magbee credible and believing his account of pain, the WCJ found that all of his complaints were subjective, rather than objective. Next, the WCJ denied Mr. Magbee's request for the left-knee MRI, finding that the record contained no evidence establishing the need for this test. Finally, the WCJ held that the EMG and nerve conduction testing recommended by Dr. Cobb should be performed.

With regard to penalties, the WCJ awarded Mr. Magbee $2,000.00 in penalties based on FedEx's underpayment of his indemnity benefits; $250.00 in penalties for FedEx's late submission of Dr. Gidman's medical records; and $5,000.00 in penalties for FedEx's termination of Mr. Magbee's indemnity benefits based on his failure to attend the second medical opinion examination. However, the WCJ denied penalties based on FedEx's denial of a May 10, 2010 appointment Mr. Magbee had with Dr. Cobb; its refusal to approve additional physical therapy; its refusal to approve the cervical and lumbar epidural steroid injections; its refusal to approve the left-knee MRI; and its untimely payment of indemnity benefits representing the waiting week. With regard to the claim for attorney fees, the WCJ awarded Mr. Magbee $7,000.00 for the work performed by his counsel and based that amount only on the work performed on the issues of FedEx's termination of indemnity benefits, the miscalculation of his average weekly wage, and FedEx's failure to timely provide Dr. Gidman's medical records to Mr. Magbee.

After the WCJ executed a July 29, 2011 judgment conforming to the reasons for judgment, Mr. Magbee has appealed from this judgment, raising six assignments of error:

1. The workers' compensation judge erred in failing to award a penalty for Federal Express's denial of physical therapy ordered by Dr. John Cobb.

2. The workers' compensation judge erred in denying the left knee MRI ordered by Dr. John Cobb and in failing to award a penalty for this denial.

3. The workers' compensation judge legally erred in including in paragraph 5 of the Findings of Fact in the judgment the following language:

    "[U]ntil wages are earned or an earning capacity is established pursuant to La.R.S. 23:1221(3)."

4. The workers' compensation judge legally erred in not awarding reasonable and necessary medical treatment but including in the judgment that any relief not specifically granted is hereby denied which is a violation of the law.

5. The workers' compensation judge erred in not awarding a penalty for Federal Express's failure to approve Mr. Magbee's appointment with Dr. Cobb on May 5, 2010.

6. The workers' compensation judge legally erred in limiting the attorney fee award to only those penalty issues upon which Mr. Magbee prevailed at trial.

**OPINION**

The standard of review applied on appeal in workers' compensation cases is well settled. In *Poissenot v. St. Bernard Parish Sheriff's Office*, 09-2793, p. 6 (La. 1/9/11), 56 So.3d 170, 174 (alteration in original), the supreme court stated:

Further, factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dept. of Corrections*, 93-1305 (La.2/28/94), 633 So.2d 129, 132; *Freeman v. Poulan/Weed Eater*, 93-1530 (La.1/14/94), 630 So.2d 733, 737-38. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Freeman, supra* at 737-38; *Stobart v. State through Dept. of Transp. and Development*, 617

11

So.2d 880, 882 (La.1993); *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). "In determining whether a [WCJ's] finding that an employee has met his initial burden of proving entitlement to SEBs is manifestly erroneous, a reviewing court must examine all evidence that bears upon the employee's inability to earn 90% or more of his pre-injury wages." *Seal v. Gaylord Container Corp.*, 97-0688 (La.12/2/97), 704 So.2d 1161, 1166.

Furthermore, whether the WCJ committed legal error in rendering a decision presents a question of law. A question of law is simply reviewed by determining whether the ruling is legally right or wrong. *LeBlanc v. Lafayette Consol. Gov't*, 07-1608 (La.App. 3 Cir. 5/28/08), 983 So.2d 1022.

### *First Assignment of Error*

In his first assignment of error, Mr. Magbee argues that the WCJ erred by not awarding him a penalty based on FedEx's refusal to approve additional physical therapy despite having found that physical therapy was warranted.

Dr. Cobb ordered physical therapy for Mr. Magbee's cervical and lumbar spine after his initial examination on December 21, 2009. Although he discontinued the treatment after Mr. Magbee's next visit, Dr. Cobb restarted it again on February 22, 2010, to be continued until Mr. Magbee reached maximum benefit, because Mr. Magbee expressed a belief that the physical therapy had helped in his recovery. Mr. Magbee attended twenty-two sessions of physical therapy between January 6, 2010 and March 23, 2010. By March 23, Fran Mancuso, the physical therapist, indicated that Mr. Magbee's neck pain rating had decreased, that his functional skills had improved, that his cervical spine range of motion and lumbar spine flexion range of motion had increased slightly, but that his low back pain had not changed.

On April 5, 2010, Mr. Magbee informed Dr. Cobb that the physical therapy had helped him regain his balance, so Dr. Cobb recommended that it continue. Sedgwick submitted the request for continued physical therapy treatment for

12

utilization review by a physician reviewer retained by Intracorp. That review was performed by Dr. William H. Milnor, a Texas orthopedic surgeon, who determined that the request did "not meet the established standards of medical necessity." Based only on this utilization review, Sedgwick rejected the request to continue physical therapy.

Dr. Cobb again recommended physical therapy on June 14, 2010, because Mr. Magbee began to complain of increased pain in his hip and back after his therapy had ended. Sedgwick submitted this request for utilization review to Intracorp. The physician reviewer, Dr. R. A. Shirley, an orthopedic surgeon licensed to practice in California, Connecticut, Florida, Mississippi, Missouri, Oklahoma, and Texas, determined that additional physical therapy was unwarranted. Notice of this finding was sent to Sedgwick on July 1, 2010, and immediately thereafter, Sedgwick again denied Dr. Cobb's request for additional therapy for Mr. Magbee.

In *LeMelle v. Wal-Mart Stores, Inc.*, 04-527, pp. 10-11 (La. 9/29/04), 883 So.2d 526, 552-53, this court set out the law pertaining to the award of penalties in instances where the employer has denied recommended treatment based on utilization review:

> As stated in *Harrington v. Coastal Construction & Engineering*, 96-681, p. 3 (La.App. 3 Cir. 12/11/96), 685 So.2d 457, 459, *writ denied*, 97-0109 (La.3/7/97), 689 So.2d 1375, "the employer must rely on competent medical advice when the decision to deny the medical treatment is made." The mere production of a different opinion of a doctor who never examined the claimant does not constitute competent medical advice sufficient to reasonably controvert the claim. *Id.*; *see also Phillips v. Diocese of Lafayette*, 03-1241 (La.App. 3 Cir. 3/24/04), 869 So.2d 313. While a utilization review process has its place in the workers' compensation process, this court has consistently held that a long-distance diagnosis by a physician advisor is not an acceptable basis for denial of treatment and benefits. *See id.* In the instant case, the long-distance diagnosis flies in the face of the undisputed findings of the treating physician at

13

a time when Wal-Mart was paying temporary total disability benefits, making Wal-Mart's actions even more egregious.

In concluding that additional physical therapy was warranted, the WCJ relied on Dr. Broussard's findings and his recommendation for an FCE. However, the award or non-award of a penalty is passed on what the employer knew at the time it refused to approve the requested treatment. In this case, Mr. Magbee had not seen Dr. Broussard when the decision was made to deny additional physical therapy, and FedEx's complete reliance was on the opinions of the utilization review physicians. Discounting the utilization review opinions, we find that Sedgwick and FedEx failed to reasonably controvert Mr. Magbee's claim for additional physical therapy, and the WCJ erred in not awarding a penalty for this failure.

Accordingly, we reverse the WCJ's judgment on this issue and award Mr. Magbee $2,000.00 in penalties based on FedEx's failure to approve Dr. Cobb's request for additional physical therapy.

### Second Assignment of Error

In this assignment of error, Mr. Magbee argues that the WCJ erred by failing to find that he was entitled to the left-knee MRI and a concomitant penalty. We agree.

Dr. Gidman's records indicate that Mr. Magbee complained of severe pain in his left knee on December 10, 2009, the day after his fall. On December 23, 2009, Dr. Cobb noted that Mr. Magbee was positive for pain down both legs and stiff, painful joints. On April 4, 2010, when Mr. Magbee complained of pain in his legs, worse in his left knee, Dr. Cobb diagnosed a possible twisting injury or meniscus tear in the knee and ordered an MRI. The request for the MRI was sent to FedEx by Mr. Magbee's counsel by letter dated April 13, 2010. Sedgwick denied

14

coverage of his left-knee complaints. Over time, Dr. Cobb's records indicate that Mr. Magbee's left knee improved somewhat. However, Dr. Morgan noted medial joint line tenderness in Mr. Magbee's left knee during the second medical opinion examination on February 14, 2011, although he related any need for the left-knee MRI to Mr. Magbee's post-polio syndrome.

Dr. Gidman's medical records also includes a previous physical examination of Mr. Magbee performed by Dr. Cary Hernandez, a physician with the Acadiana Center for Orthopedic & Occupational Medicine, L.L.C., out of which Dr. Gidman practices. The June 30, 2009 examination, taken for the purpose of recertifying his commercial driver's license with the Louisiana Department of Public Safety and Corrections, notes Mr. Magbee's history of polio and the residual left-leg weakness, atrophy, and limp, but does not indicate any problem with his left knee. In fact, the form specifically states "Extremities-Limb impaired. Driver may be subject to SPE certificate if otherwise qualified." Dr. Hernandez marked that there was no extremity-limb impairment, with the qualifying comment concerning Mr. Magbee's mild limp as a result of his past history of polio.

In denying Mr. Magbee's request for the MRI, the WCJ stated:

The MRI, I'm denying because, for reasons previously stated. There's really nothing objective showing a problem with the knee. The more recent reports from Dr. Cobb, in fact, indicated that Mr. Magbee's knee was getting much better or was better. In fact, Dr. Cobb quit recommending the lower extremity MRI after a time. And quite honestly, the way that the accident was described, both by Mr. Magbee's testimony today or looking back to the December 2009[] report of Dr. Cobb, when the first description was given to Dr. Cobb – or was it Gidman – of the injury, where there was the primary, first initial fall on the buttocks and then flat on the back, both of those, I have a hard time of figuring out how the knee could have really been implicated. But, that's not really addressed in any detail. I simply leave it at the evidence doesn't establish, by a preponderance, the medical necessity of an MRI of the left leg or the right leg, if I got that wrong.

15

A review of Dr. Cobb's records reveal that although he stopped requesting an MRI for the left knee, up until the last report in evidence, he listed a medial meniscus injury in Mr. Magbee's left knee as one of his diagnoses. On June 14, 2010, Mr. Magbee complained that he felt a stretching, tearing sensation in his knee while bending. In July and November of 2010 and March of 2011, he reported that his knee had improved. Without the benefit of the MRI, it would be difficult to determine the nature or source of the injury to Mr. Magbee's knee. As stated in *LeMelle*, 883 So.3d 526, an employer's decision to deny a recommended treatment or procedure must be based on competent medical advice. However, Sedgwick has not proven that its decision was based on competent medical advice in denying this request as there is nothing in the record to explain why it denied this request.

Accordingly, we reverse the WCJ's judgment finding that the left-knee MRI was not necessary. We further award Mr. Magbee a $2,000.00 penalty based on FedEx's failure to reasonably controvert this claim.

### Third Assignment of Error

In his third assignment of error, Mr. Magbee argues that the WCJ legally erred by including in the judgment the language, "until wages are earned or an earning capacity is established pursuant to La.R.S. 23:1221(3)." Mr. Magbee complains that should this language remain in the judgment, FedEx would be relieved of the obligation of first proving a change in circumstances and earning capacity before unilaterally terminating or modifying Mr. Magbee's supplemental earnings benefits.

16

In the oral reasons for judgment, the WCJ stated the following with regard to the award of supplemental earnings benefits to Mr. Magbee:

> Therefore, I believe the evidence preponderates that Mr. Magbee is entitled to Supplemental Earnings benefits at zero earning capacity at this point in time, thereby entitling him to the maximum benefits for the time of the injury of Five Hundred Seventy-Seven Dollars per week.
>
> As I mentioned earlier, I will enter judgment that he is entitled to those benefits payable in accordance with the statute 1221 (3). Therefore, for any month in which Mr. Magbee earns wages or the employer is able to meet a burden of establishing an earning capacity in accordance with the statute and the *jurisprudence* pertaining thereto, benefits may be payable at a different rate.

(Alteration in original.)

Considering the wording of the language inserted in the judgment and the WCJ's oral reasons, we find no merit in this assignment. It is implicit in the language "earning capacity is established pursuant to La. R.S. 23:1221(3)" that no unilateral actions, i.e., reduction or termination, can be taken by FedEx until it first satisfies the criteria of La.R.S. 23:1221(3)(c)(i) and *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551, that a suitable job exists within Mr. Magbee's and FedEx's community or reasonable geographic region; at a wage Mr. Magbee, considering his experience and training, would be expected to earn; and that the position actually existed when FedEx notified Mr. Magbee about the opening. *Peters v. Gen. Motors Corp.*, 39,279 (La.App. 2 Cir. 1/26/05), 892 So.2d 717. FedEx can only do this by a judicial proceeding before the WCJ in which it presents evidence proving its claim.

Accordingly, we find no error in the WCJ's inclusion of the contested language in the judgment. This assignment of error is dismissed for being without merit.

*Fourth Assignment of Error*

In this assignment of error, Mr. Magbee claims that the WCJ's denial of reasonable and necessary medical treatment and the inclusion of the language, "that any relief not specifically granted is hereby **DENIED[,]**" in the July 29, 2011 judgment is a violation of the workers' compensation law. Mr. Magbee argues that based on La.R.S. 23:1203 and prior jurisprudence from this court, he is entitled to all reasonably necessary future medical treatment and that this language would preclude him from seeking this relief.

Louisiana Revised Statutes 23:1203 mandates, in part, that the employer will provide all "necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal." In *Pal v. Stranco, Inc.*, 10-1507, pp. 6-8 (La.App. 1 Cir. 8/3/11), 76 So.3d 477, 481-83, *writ denied*, 11-1834 (La. 11/4/11), 75 So.3d 925 (footnotes omitted), the court explained how res judicata does not bar re-litigation in workers' compensation claims:

> In general, the doctrine of res judicata, as set forth in LSA-R.S. 13:4231, bars a subsequent action when all of the following elements are satisfied, vis-á-vis a prior action: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. *See Burguieres v. Pollingue*, 2002-1385, p. 8 (La.2/25/03), 843 So.2d 1049, 1053. The doctrine of res judicata also applies when the opposing parties enter into a compromise or settlement of a disputed matter. *Chaisson v. Central Crane Service*, 2010-0112, p. 5 (La.App. 1 Cir. 7/29/10), 44 So.3d 883, 886 (citing *Ortego v. State, Department of Transportation and Development*, 96-1322, p. 6 (La.2/25/97), 689 So.2d 1358, 1363).
>
> Louisiana Revised Statute 13:4231 was substantially amended in 1990, and it now embraces the broad usage of res judicata to include both claim preclusion (traditional res judicata) and issue preclusion (collateral estoppel). Under issue preclusion or collateral estoppel, resolution of an issue of fact or law essential to determination of the dispute precludes relitigation of the same issue in

18

a different action between the same parties. *Chaisson v. Central Crane Service*, 2010-0112 at pp. 5-6, 44 So.3d at 886-87 (citing LSA-R.S. 13:4231, 1990 Comment (b); *Mandalay Oil & Gas, L.L.C. v. Energy Development Corporation*, 2001-0993, p. 9 (La.App. 1 Cir. 8/4/04), 880 So.2d 129, 135-36, *writ denied*, 2004-2426 (La.1/28/05), 893 So.2d 72).

However, as applied to workers' compensation claims, res judicata does not bar re-litigation of claims subject to the OWC's modification jurisdiction, as set forth in LSA-R.S. 23:1310.8(A) and (B). *See Magee v. Abek, Inc.*, 2005-0388, pp. 2-3 (La.App. 1 Cir. 5/5/06), 943 So.2d 372, 373-74. The modification power of LSA-R.S. 23:1310.8(A) and (B) exists for the purpose of modifying awards due to a change in the worker's condition. Because changes in medical condition and disability status are dynamic and ongoing by their nature, the legislature enacted LSA-R.S. 23:1310.8(A) and (B) to afford needed flexibility to ensure that benefits correspond to such changes. Res judicata thus cannot preclude litigation seeking a change in the amount of compensation benefits based upon a change in disability. *Chaisson v. Central Crane Service*, 2010-0112 at p. 9 n. 6, 44 So.3d at 888 n. 6.

A review of the trial transcript reveals that the judgment in this matter was drafted by counsel for FedEx on the instruction of the WCJ, with instructions for FedEx to submit the proposed judgment to counsel for Mr. Magbee so that objections could be made as to form. Although there is nothing in the record to suggest that counsel for Mr. Magbee objected to this language, we find that it would better further the liberal construction accorded our workers' compensation laws if this language is deleted from the judgment. This would especially avoid confusion in the event that Mr. Magbee raises any future medical claims. Considering the fact that the WCJ awarded Mr. Magbee additional medical treatment, in the form of the EMG, nerve conduction tests, physical therapy, an FCE, and vocational rehabilitation counseling and our award of the left-knee MRI, it is not unlikely that future reasonably necessary medical treatment will be required. Accordingly, we order the deletion of the language, "**IT IS FURTHER ORDERED** that any relief not specifically granted is hereby **DENIED.**" from the July 29, 2011 judgment.

*Fifth Assignment of Error*

In this assignment of error, Mr. Magbee argues that the WCJ erred by not awarding him a penalty based on FedEx's denial of his May 10, 2010 appointment with Dr. Cobb. In support of his argument, Mr. Magbee points out a letter sent by his counsel on May 11, 2010, to counsel for FedEx. The letter states that counsel is confirming, based on a May 7, 2010 phone conversation with counsel for FedEx, that Mr. Magbee's benefits were terminated and his treatment with Dr. Cobb was not approved by FedEx due to Mr. Magbee's failure to appear at a second medical opinion appointment with Dr. Foster.

Mr. Magbee testified that Dr. Cobb's office called and told him that his May 10, 2010 appointment was canceled because Sedgwick's denied approval for the treatment. However, Mr. Magbee's July 30, 2010 amended disputed claim indicates that his indemnity benefits were terminated on April 1, 2010. The notes by the adjustor handling Mr. Magbee's claims indicate on May 4, 2010, that although medical treatment and disability continued in this matter, temporary total disability benefits was stopped because Mr. Magbee failed to attend FedEx's second medical opinion examination. An earlier note on April 27, 2010, mirrors the later entry with regard to the cessation of temporary total disability benefits and the reasons behind the action taken.

In denying a penalty on this issue, the WCJ stated that Dr. Cobb's medical records failed to substantiate Mr. Magbee's claim. Although the WCJ found nothing in Mr. Magbee's testimony to cast doubt on his testimony, there also existed nothing in Dr. Cobb's records to support a conclusion that FedEx had refused to pay for the scheduled appointment. Based on this lack of evidence and a strict construction of La.R.S. 23:1201(F), the WCJ denied Mr. Magbee's request

20

for penalties on this issue. Considering the conflicting evidence, we find no manifest error in the WCJ's determination to deny penalties on this issue.

***Sixth Assignment of Error***

In his final assignment of error, Mr. Magbee argues that the WCJ legally erred by only awarding attorney fees based on the issues for which he received penalties. He argues that based on his counsels' affidavits and the holding in *McCarroll v. Airport Shuttle, Inc.*, 00-1123 (La. 11/28/00), 773 So.2d 694, he is entitled to recover the entire amount of attorney fees sought, $14,550.00, for the work his counsel put forth in representing his claim.

In the oral reasons for judgment, the WCJ stated that the $7,000.00 award was based on FedEx's discontinuance of Mr. Magbee's indemnity benefits, its miscalculation of his average weekly wage, and its failure to timely provide Dr. Gidman's medical records. Mr. Magbee asserts that the award should be based on the efforts of his attorneys relative to all issues, including those issues for which he did not receive a penalty. We agree.

In *McCarroll*, 773 So.2d at 700, the supreme court held:

> In our determination of the respective rights of the employee and the attorney to the statutory attorney fees, a persuasive factor is the methodology used to calculate the amount of the statutory attorney fees. The only limitation on the amount is the reasonableness of the fee awarded by the judge. *Cain* [*v. Employers Cas. Co.*, 236 La. 1085, 110 So.2d 108 (1959)]. The amount awarded rests within the discretion of the workers' compensation judge, as long as that amount is supported by the record. Some of the factors taken into account by the judge in fixing the amount of the fee are the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the employee, and the amount of time the attorney devoted to the case. [14] H. Alston Johnson, III, [Louisiana Civil Law Treatise: Workers' Compensation Law and Practice] § 389 [(3rd ed.1994)]. *The amount awarded is intended to provide full recovery, without statutory limitation, for attorney's services and expenses in connection with the litigation.* If the attorney were allowed to collect the contractual attorney fees in addition to the full compensation awarded in the statutory attorney fees, the attorney would get double

21

recovery (to the extent of the limited contractual fee) for his services, at the expense of his client.

> We therefore conclude that the statutory attorney fees, awarded to the employee in cases of arbitrary behavior of the employer or the insurer, were intended to benefit the employee, who would otherwise have to pay the contractual attorney fees out of his or her benefits recovered in the litigation, and were not intended to provide additional fees to the employee's attorney, who received the amount of the statutory attorney fees as full compensation for legal services in the litigation.

(Emphasis added.)

Based on the supreme court's holding in *McCarroll*, we find that the WCJ erred in awarding statutory attorney fees based only on the three issues for which penalties were awarded. However, we do not find that Mr. Magbee is entitled to an attorney fee award of the full amount evidenced by the affidavits submitted. The record contains two affidavits from Mr. Magbee's attorneys. One is by the senior attorney who claims to have contributed fourteen hours to the litigation and who charges $225.00 per hour for his time. The other attorney claims to have contributed seventy-six hours to the litigation and claims an hourly rate of $150.00. This establishes a total time of ninety hours and a total fee of $14,550.00.

FedEx does not dispute the amount of time credited toward the case by Mr. Magbee's lawyers, nor do we. However, in applying the factors set forth in *McCarroll*, we conclude that the time spent in resolving the issue of Dr. Gidman's second medical opinion in November of 2010, and the revision of the doctor's patient-intake forms simply extended an otherwise simple issue and should not be counted toward the overall attorney fee. Therefore, we amend the judgment of the WCJ to increase the attorney fee award from $7,000.00 to $12,000.00.

## DISPOSITION

For the foregoing reasons, we reverse the judgment of the WCJ denying Mr. Magbee's request for treatment, penalties, and attorney fees based on FedEx's

22

refusal to approve the left-knee MRI and physical therapy. We render judgment awarding Mr. Magbee the left-knee MRI and penalties of $4,000.00 based on FedEx's actions in denying approval for the MRI and physical therapy. We amend the judgment of the WCJ to increase the amount of attorney fees awarded to Mr. Magbee from $7,000.00 to $12,000.00. We amend the WCJ judgment to delete the language, "**IT IS FURTHER ORDERED** that any relief not specifically granted is hereby **DENIED**." We assess all costs of this appeal to the defendant, Federal Express Corporation.

**AFFIRMED IN PART AS AMENDED; REVERSED IN PART; AND RENDERED.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-77

PAUL MAGBEE

VERSUS

FEDERAL EXPRESS

**GREMILLION, Judge, concurs in part and dissents in part and assigns written reasons.**

I dissent from the majority's opinion only on assignments of error two and six.

*Assignment of error two:*

In assignment of error two, Magbee complains that the WCJ refused to authorize the MRI of his left knee. The WCJ noted that Magbee fell onto his buttocks and back and wondered how his left knee could have been injured in the fall. The WCJ also noted that during the course of treating Magbee's left knee, Dr. Cobb noted no objective findings, Magbee reported subjectively that the knee grew less painful over time, and Dr. Cobb stopped requesting the MRI after a time.

Magbee suggested that Dr. Cobb stopped requesting the MRI only after the studies had been repeatedly denied. He also argued that a presumption of causation attaches to this injury, because he had no problems before the accident and his complaints arose shortly after the accident. Because the problems to his knee are internal, Magbee argues, there would be no objective findings associated with the knee unless demonstrated on the MRI; in other words, according to Magbee, the WCJ relied upon the absence of objective findings to justify the denial

of the only means of uncovering objective findings. The WCJ's conclusion was that Magbee failed to carry his burden of proving the medical necessity of the MRI.

The finding of the WCJ is reviewed under the manifest error standard. *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551. The WCJ was well within her discretion as the trier of fact to accept the opinions of Drs. Morgan and Broussard, who both opined that the complaints Magbee voiced about his knee were related to post-polio syndrome and not the on-the-job fall. I find no manifest error in the WCJ's interpretation of the history provided by Magbee over the course of his treatment. Accordingly, I would affirm the denial of the left knee MRI.

*Assignment of error six:*

In assignment of error six, Magbee disputes the WCJ's ruling limiting the award of attorney fees to those issues on which he was awarded penalties. He argues, and the majority agrees, that the Louisiana Supreme Court's ruling in *McCarroll v. Airport Shuttle, Inc.*, 00-1123 (La. 11/28/00), 773 So.2d 694, requires the WCJ to award him attorney fees for all work his attorney performed on the case, regardless of the outcome. I do not read *McCarroll* as the majority does.

I believe the majority has placed the cart before the horse in its review of the award. "The amount award[ed] [in attorney fees] by the WCJ will not be disturbed unless we find that the WCJ abused her discretion." *Evergreen Presbyterian Ministries v. Wallace*, 07-313, p. 5 (La.App. 3 Cir.10/10/07), 968 So.2d 256, 260. The fact that the WCJ erroneously interpreted the law does not necessarily lead to the conclusion that the award represents an abuse of discretion on the WCJ's part. I conclude that the WCJ did not abuse her discretion. And I find that she properly interpreted the law.

2

Attorney fees in workers' compensation cases are awarded to deter intransigent behavior on the employer's part. *Id.* Like most cases in Louisiana law, attorney fees are limited to those circumstances in which they are authorized by statute. In this case, the legislature has authorized attorney fees in workers' compensation cases only when the employer has failed to consent to treatment or to pay for treatment or compensation benefits or has failed to timely pay a non-appealable judgment or settlement. La.R.S. 23:1201. The language of Section 1201(F) lends support to an interpretation that couples the award of attorney fees to an award of penalties (emphasis added):

> Failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees *for each disputed claim. . . .*

Had the legislature intended to allow recovery for attorney fees for work on the entire workers' compensation claim, it could have simply provided for an award of attorney fees in all compensation cases, omitted the reference to fees for each disputed claim, or inserted the emphasized language after the penalty provision and before the attorney fee provision.

Additional support for this interpretation is found in Subsection (J), which provides that only one reasonable attorney fee may be awarded in connection with any hearing on the merits of a disputed claim, and which further provides that "an award of such single attorney fee shall be res judicata *as to any and all conduct for which penalties may be imposed* under this Section which precedes the date of the hearing." (Emphasis added). We also note that the employee recovers no attorney fees if the claim is reasonably controverted or if "such nonpayment results from

3

conditions over which the employer or insurer had no control." La.R.S. 23:1201(F)(2). The statute clearly ties the recovery of attorney fees to the recovery of penalties.

*McCarroll* involved an attorney's attempt to recover both his contractual contingency fee and the attorney fees awarded by the WCJ from his client. The WCJ limited the attorney to the attorney fee award, and the attorney appealed. The court of appeal sided with the employee as well, and the supreme court granted writs to resolve this issue. In analyzing the dispute, the court noted that there were two types of attorney fees at issue, contractual and statutory. It stated regarding statutory fees:

> Finally, statutory fees are not payable in every case of successful litigation, but rather are payable only where the employer or insurer fails to pay benefits timely and fails, at trial, to show a reasonable controversy over the claim (or to show that nonpayment is the result of conditions over which the employer or insurer had no control).

*McCarroll*, 773 So.2d at 698. The only limitation on the amount of attorney fees is that they must be reasonable. *Id.*

In *McCarroll*, the WCJ awarded plaintiff penalties and attorney fees of $15,000.00 for the employer's failure to timely pay benefits. Plaintiff's counsel sought to personally receive both his contractual fee and the whole of the attorney fee awarded. He filed a motion seeking both fees, which the WCJ denied. The attorney sought writs, which the court of appeal denied, but which the supreme court granted. The court noted that there were two kinds of fees at issue, contractual and statutory (those associated with the award of penalties). Contractual fees are payable in every successful case, but statutory fees are not. The legislature intended the penalties and attorney fees to serve as a deterrent to arbitrary conduct by the employer or its insurer. The only limitation on the award of statutory fees is that they be reasonable. The language on which the majority bases its reasoning is:

4

> The amount awarded is intended to provide full recovery, without statutory limitation, for attorney's services and expenses in connection with the litigation. If the attorney were allowed to collect the contractual fees in addition to the full compensation awarded in the statutory attorney fees, the attorney would get double recovery (to the extent of the limited contractual fee) for his services, at the expense of the client.

*Id.* at 700. The court concluded that the attorney was entitled to the statutory fee less the amount of the contractual fee.

The supreme court followed the *McCarroll* decision with *Langley v. Petro Star Corp. of La.*, 01-0198 (La. 6/29/01), 792 So.2d 721, in which the plaintiff sought attorney fees against the employer for its failure to pay benefits under a consent judgment. The WCJ awarded $3,000.00 in attorney fees and the employer appealed. We affirmed, ruling that the employer's culpability in failing to pay was a factor that should be considered in assessing the attorney fee. *Langley v. Petro Star Corp of La.*, 00-699 (La.App. 3 Cir. 12/29/00), 788 So.2d 448. This created a split among the circuits, as the second and fifth circuits, as well as a separate panel of this court, had held that the defendant's bad faith was not part of the calculus. The supreme court held that culpability was not a factor to consider in assessing attorney fees. It reasoned that the statutory scheme draws a clear distinction between penalties and attorney fees. In the event of failure to timely pay a judgment, a claimant is entitled to both penalties and attorney fees, but in the case of arbitrary discontinuance of benefits, only attorney fees are authorized. To couple the amount of attorney fees to the degree of the defendant's culpability would blur the distinction between penalties and attorney fees. The supreme court stated regarding *McCarroll*:

> *McCarroll* makes it clear that although the primary consideration in the *imposition* of attorney fees is not to compensate the employee, but rather to discourage certain offensive behaviors on the part of the employer or insurer, *Sharbono* [*v. Steve Lang & Son Loggers*, 97-0110 (La. 7/1/97), 696 So.2d 1382] at p. 5, 696 So.2d at 1386, the *amount* of statutory attorney fees awarded is intended to fully compensate the employee's attorney, thereby benefitting the employee, for his services rendered in connection with the litigation. To include

a penal component in the amount of attorney fees assessed would allow an attorney to receive compensation in excess of the scheme provided by the legislature and undermine the purposes underlying an award of statutory attorney fees in the workers' compensation context

*Id.* at 726.

In 2002, after *McCarroll* and *Langley*, a panel of this court decided the case of *Duhon v. Trend Services, Inc.*, 01-1194 (La.App. 3 Cir. 3/6/02), 809 So.2d 1222, in which the employee's counsel, as in this case, argued that *McCarroll* required that his client be awarded fees roughly equivalent to what he would have charged an hourly-billed client, 58 hours times $125.00/hour. We rejected that argument, noting that the WCJ determined that counsel had spent half his time pursuing those penalty claims that were not reasonably controverted by the employer stating:

> Since the employer reasonably controverted Duhon's continued benefits claim, he was not entitled to attorney's fees for pursuing it. We cannot say the formula employed by the ALJ for excluding the hours the attorney spent in advancing the unsuccessful issue was unreasonable. Counsel does not argue that he invested more hours than the judge allotted to the stipulated issues. Instead, counsel contended he was entitled to an award based on all the hours he spent. Neither the Supreme Court's holding in *McCarroll* nor La. R.S. 23:1201F support his contention.

*Id.* at 1227.

*Duhon* was followed by *Armentor v. Arrow Pest Control*, 02-533 (La.App. 3 Cir. 10/30/02), 832 So.2d 378, *writ denied*, 03-0139 (La. 3/21/03), 840 So.2d 536. Plaintiff sought penalties and attorney fees for the employer's underpayment of indemnity benefits, failure to authorize neck surgery, failure to timely pay mileage reimbursement, failure to timely supply medical reports, failure to authorize physical therapy, and failure to authorize prescription drugs. The WCJ held that the employer reasonably controverted the employee's claim for penalties and attorney fees for not authorizing neck surgery, prescriptions, and provide physician reports. It assessed attorney fees of $2,000.00 for failure to authorize prescription drugs and $5,000.00 for failure to timely pay indemnity. We affirmed on the issue

6

of a penalty and attorney fees for failure to authorize neck surgery because plaintiff failed to attend an IME. We reversed on the issue of failure to reimburse plaintiff for his mileage and awarded a penalty of $2,000.00 and an attorney fee of $1,000.00. We affirmed on the issue of failure to authorize physical therapy because plaintiff had indicated to his treating physician that he felt physical therapy was not helping. We reversed the awards of a penalty and attorney fees on the issue of prescription drugs. Lastly, we awarded plaintiff an attorney fee of $250.00 for the employer's failure to timely supply plaintiff with physician reports. Despite the plaintiff's argument that the amount of attorney fees was in error, we affirmed the remaining attorney fee awards on the grounds that the WCJ did not abuse her discretion, citing *Duhon*.

More recently, in *Weldon v. Holiday Inn-Jennings*, 11-203 (La.App. 3 Cir. 10/15/11), 76 So.3d 115, *writ denied*, 11-2463 (La. 1/20/12), 78 So.3d 144, we held that of the fifty-seven hours plaintiff's counsel had spent working on his client's case, 35 were spent working on those issues for which penalties were awarded. We reduced the WCJ's award of fifty-seven hours at $225/hour to thirty-five hours at $225.00/hour.

The majority's interpretation of *McCarroll* creates a paradox: If the employee prevailed on no penalty issues, he would receive no attorney fees, but if he prevails on just one penalty claim, he would be entitled to an award of an attorney fee for all the work his attorney devoted to his entire case. This argument has been repeatedly rejected by this court, at least in practice if not in theory.

In conclusion, the first inquiry must be whether the amount awarded in attorney fees was abusive; only then can it be adjusted, regardless of the logic by which the WCJ arrived at the award. In the past, this court has fixed attorney fee awards on the basis of the penalty issues, which I believe is the proper

7

interpretation of *McCarroll* and La.R.S. 23:1201. I would affirm the award of attorney fees.