STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-0527


ELIZABETH A. LEMELLE

VERSUS

WAL-MART STORES, INC.


\*\*\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4,
PARISH OF LAFAYETTE, NO. 02-06488,
HONORABLE SAM LOWERY,
WORKERS' COMPENSATION JUDGE


\*\*\*\*\*\*\*\*\*\*\*\*


JIMMIE C. PETERS
JUDGE


\*\*\*\*\*\*\*\*\*\*\*\*


Court composed of Jimmie C. Peters, Glenn B. Gremillion, and Billy H. Ezell, Judges.


**AFFIRMED AS AMENDED.**


Thomas E. Townsley
Attorney at Law
711 Pujo Street
Lake Charles, LA  70601
(337) 430-0994
COUNSEL FOR PLAINTIFF/APPELLEE:
    Elizabeth A. LeMelle

Frank A. Flynn
Allen and Gooch
Post Office Box 3768
Lafayette, LA  70502-3768
(337) 291-1250
COUNSEL FOR DEFENDANT/APPELLANT:
    Wal-Mart Stores, Inc.

PETERS, J.

In this workers' compensation case, Wal-Mart Stores, Inc. has appealed a judgment awarding its former employee, Elizabeth A. LeMelle, weekly compensation benefits, medical treatment, medical expenses, penalties, and attorney fees. Mrs. LeMelle has answered the appeal, seeking an increase in the trial attorney fee award and an attorney fee award for the work performed on appeal. For the following reasons, we affirm the judgment below in all respects and amend it to award an additional amount for attorney fees for work performed on appeal.

## DISCUSSION OF THE RECORD

In April of 2001, Elizabeth LeMelle began working as a full-time employee for Wal-Mart Stores, Inc. (Wal-Mart) at its Lafayette, Louisiana store. On August 30, 2001, she sustained personal injuries while in the course and scope of her employment when she fell into the lower level of an oil change bay while attempting to service a customer's vehicle. At the time of the accident, Wal-Mart was paying for Mrs. LeMelle's services at the rate of $7.00 per hour. Wal-Mart paid benefits and medical expenses pursuant to the Louisiana Workers' Compensation Act for various periods after the accident but ultimately terminated payment of all benefits. At trial, Wal-Mart contested only the extent and duration of Mrs. LeMelle's injuries.

Between graduation from high school in 1991 and her August 30, 2001 accident, Mrs. LeMelle developed a significant medical history. For example, Mrs. LeMelle suffered anxiety attacks associated with a 1991 employment situation, which required treatment with Prozac. In December of 1992, she fell from a ladder and sustained personal injuries while working at a pizza establishment. She lost her first child in 1993, and, after the birth of her second child in 1995, underwent a complete hysterectomy and appendectomy. Two automobile accidents, one in 1994 and one

in 1996, resulted in Mrs. LeMelle suffering from what she described as deep tissue strains and sore muscles in her back and neck. However, none of the medical conditions proved disabling for any significant length of time, and there exists no evidence that her prior medical difficulties affected her job performance at Wal-Mart.

When Mrs. LeMelle fell approximately ten feet into the lower oil change bay at Wal-Mart on August 30, 2001, she lost consciousness for a short period of time and sustained injuries to the entire right side of her body. An ambulance transported her to the Southwest Medical Clinic in Lafayette, Louisiana, where she complained to the treating physicians of pain in her right elbow, head, right leg, ankle, back, and ribs. The personnel at the clinic administered medical treatment and released her.

Mrs. LeMelle began long-term treatment for her injuries on September 6, 2001, when she first saw Dr. Harold Granger, a Lafayette, Louisiana orthopedic surgeon. Based on his medical findings and the history provided by Mrs. LeMelle, Dr. Granger concluded that, as a result of the accident, she suffered from lumbar, cervical, and thoracic strains; tinnitus or ringing in the ears; loss of memory; a medial meniscus tear in the right knee; and post-concussion syndrome. In Dr. Granger's medical opinion, Mrs. LeMelle could not return to gainful employment at that time. Wal-Mart began paying temporary total disability benefits at the rate of $169.95 per week.

Very early in his treatment, Dr. Granger referred Mrs. LeMelle to Dr. Fabian Lugo, a Lafayette, Louisiana neurologist, for treatment of her post-concussion syndrome, tinnitus, and memory loss. However, he continued to treat Mrs. LeMelle's other conditions, particularly her right knee condition. Dr. Granger last saw Mrs. LeMelle before the July 24, 2003 trial on the merits on March 21, 2003. Mrs. LeMelle's complaints remained consistent concerning the injuries to her head, neck,

2

back, and knee during Dr. Granger's continued treatment, although there were times of temporary improvement. On March 21, 2003, Dr. Granger opined that Mrs. LeMelle's injuries sustained in the August 30, 2001 accident precluded her from returning to any gainful employment at that time.

Mrs. LeMelle experienced temporary improvement in late December of 2001, at which time Dr. Granger released her to try light-duty work. Although Wal-Mart accommodated her with a light-duty position, Mrs. LeMelle's knee condition continued to deteriorate, and she ceased working on March 17, 2002. During her attempt at light duty, Wal-Mart paid no workers' compensation benefits. However, immediately after March 17, 2002, Wal-Mart reinstated temporary total disability benefits. On August 27, 2002, Wal-Mart issued a $984.96 check to Mrs. LeMelle for this period of light-duty work. This check represented the supplemental earnings benefits to which she was entitled during that time.

In the meantime, Dr. Granger continued to treat Mrs. LeMelle's knee injury and ultimately concluded that surgical intervention was necessary. On July 5, 2002, he performed a right knee arthroscopy to repair the meniscal tear and an approximate patellofemoral realignment to correct the mal-adjustment of the knee cap. The second procedure became necessary because the knee cap had begun to "pop out of place," causing Mrs. LeMelle significantly more pain. Post-surgical treatment included physical therapy and the use of a patella stabilizer.

In late November of 2002, Dr. Granger again released Mrs. LeMelle to light-duty work, and she again returned to Wal-Mart, this time as a customer greeter. However, in doing so, he stated that her knee was still "not doing well" and that she was still in a "fair amount of pain." Mrs. LeMelle worked only one week, from

3

November 23, 2002, to November 30, 2002, being unable to perform even this limited duty. Mrs. LeMelle's inability to perform even a greeter's function was exacerbated by a lengthy daily commute, because she and her family had moved from Lafayette to Welch, Louisiana. Consequently, she was required to travel approximately sixty miles before even beginning work, and this daily trip aggravated her knee condition. Additionally, the work schedule prevented Mrs. LeMelle from participating in a physical therapy program recommended by Dr. Granger. When Wal-Mart was unable to provide employment closer to her home, the combination of these factors caused her to abandon the light-duty position. Wal-Mart ceased paying any benefits after November 30, 2002.

Sometime after her November 2002 attempt to return to Wal-Mart, Mrs. LeMelle obtained a part-time position at a Welch, Louisiana Market Basket Grocery Store located immediately behind her home. She continued in that part-time employment until March of 2003, when continued difficulties with her knee caused her to cease working entirely.

When Mrs. LeMelle returned to Dr. Granger in December of 2002, he concluded that she still suffered from patellofemoral mal-alignment and that the meniscal tear repair may have failed. He recommended an additional MRI to further evaluate the knee's stability. Wal-Mart refused to approve additional testing. Thereafter, without further testing, Dr. Granger could do little toward treating Mrs. LeMelle for her injuries.

Dr. Lugo began treating Mrs. LeMelle on September 27, 2001. He initially diagnosed Mrs. LeMelle as suffering from post-concussion syndrome and post-traumatic headaches. This diagnosis subsumed the tinnitus and memory loss

4

complaints, and he related these conditions to the accident of August 31, 2001. In December of 2001, Dr. Lugo recommended that Mrs. LeMelle begin a regime of vestibular rehabilitation therapy, which Wal-Mart initially approved, and Mrs. LeMelle began the therapy in late January of 2002. When Dr. Lugo recommended continuation of the therapy after the physical therapy center reported significant physical limitations at the end of the originally approved sessions, Wal-Mart refused to approve the continued treatment. Even before the physical therapy recommendation, Dr. Lugo had recommended that Mrs. LeMelle undergo neuropsychological testing because of her complaints of memory loss. This occurred on November 30, 2001, and Wal-Mart refused to approve payment for the testing.

Mrs. LeMelle's post-concussion syndrome and post-traumatic headache condition did partially improve over time, and, on April 4, 2002, Dr. Lugo released Mrs. LeMelle from his care. However, he did so partially because of her continued improvement and partially because Wal-Mart refused to pay for his recommended treatment. He instructed her to return if her condition deteriorated. Mrs. LeMelle's condition did continue to deteriorate, but when she attempted to return to Dr. Lugo in October of 2002, Wal-Mart refused to approve payment of his services.

Wal-Mart's only attempt to obtain an evaluation by its choice of physician occurred on December 2, 2002, when Mrs. LeMelle was seen by Dr. Mark Andrew Dodson, an Alexandria, Louisiana orthopedic surgeon. Dr. Dodson reported that when he attempted to examine or stress her knee, Mrs. LeMelle complained of "exquisite tenderness" to any palpitation about the knee and that, therefore, he was unable to complete his physical examination. Despite the limitations of his examination, Dr. Dodson concluded that Mrs. LeMelle suffered from causalgia, or

5

persistent pain associated with a neurologic problem. He suggested that Mrs. LeMelle might benefit from a parasympathetic nerve injection and a home physical therapy program, but he emphasized that if those treatments were not successful, he would not recommend surgery.

By correspondence dated May 15, 2003, in a final effort to obtain additional medical care, Mrs. LeMelle's attorney sought Wal-Mart's approval of a scheduled appointment with Dr. Dean Moore, a Lake Charles, Louisiana neurosurgeon. Wal-Mart refused to approve payment of Dr. Moore's services, and the appointment was cancelled.

After trial, the workers' compensation judge (WCJ) took the matter under advisement. On October 23, 2003, the WCJ rendered oral reasons for judgment (1) concluding that Mrs. LeMelle had carried her burden of proving her temporary total disability by clear and convincing evidence; (2) ordering that she be allowed certain medical testing previously rejected by Wal-Mart; (3) awarding weekly benefits for the periods of August 30, 2001, through December 17, 2001, March 17, 2002, through November 23, 2002, and from November 30, 2002, forward; (4) ordering that the weekly compensation rate be increased to $186.67; (5) awarding $8,000.00 in penalties for the denial of medical treatment and the improper payment of weekly benefits; (6) awarding $8,000.00 in attorney fees; and (7) ordering Wal-Mart to pay all costs of the proceedings. On November 18, 2003, the WCJ signed a judgment incorporating its reasons for judgment, and this appeal and answer followed.

**OPINION**

***Wal-Mart's Appeal***

***Disability Issue***

6

In its first assignment of error, Wal-Mart asserts that the WCJ erred in concluding that Mrs. LeMelle carried her burden of proving a continuing temporary total disability related to her work accident. In its second assignment of error, Wal-Mart asserts that the WCJ erred in concluding that Mrs. LeMelle is entitled to continued medical treatment and temporary total disability benefits because her current physical condition is not work related. Specifically, Wal-Mart argues in both assignments of error that Mrs. LeMelle's continuing disability is related to a March 2003 incident that occurred at the Market Basket store. Wal-Mart points to this incident as well as Mrs. LeMelle's prior medical history to suggest that she has been less than truthful in her testimony concerning her medical condition.

Mrs. LeMelle acknowledged that an incident occurred at the Market Basket store in March of 2003 and that it resulted in her being transported home in a wheelchair. However, she denied that the incident was a new and separate injury to her knee. She testified that in March of 2003, while standing next to a drain in the store, she placed her weight on her right foot and it simply slid to the left. When this occurred, she caught herself on a counter, but not before her right leg tensed up. She related this incident to Dr. Granger at the March 21, 2003 appointment. On that day, Dr. Granger's physical examination revealed significant peri-patellar tenderness and extremely weak supportive muscles in the leg. However, Dr. Granger did not consider this incident to be a new accident, but attributed Mrs. LeMelle's complaints to her original injury. He again emphasized the need for an MRI and further physical therapy, neither of which had been approved by Wal-Mart.

Wal-Mart further suggests that Mrs. LeMelle's denial of her past medical history in her testimony makes her credibility on the Market Basket incident and other

7

events so suspect that the WCJ erred in reaching its decision. We do not so construe

Mrs. LeMelle's testimony. She did not deny her past medical history, but testified

that she simply did not remember many of the details. This would not necessarily be

unusual for one complaining at the outset that she suffered memory loss from the

accident.

Importantly, credibility determinations are for the trier of fact and, absent

manifest error, will not be disturbed on appeal. *Freeman v. Poulan/Weed Eater*, 93-

1530 (La. 1/14/94), 630 So.2d 733. In this matter, the WCJ listened to the testimony

presented and reviewed the other evidence, including Mrs. LeMelle's pre-accident

medical history. In doing so, the WCJ stated the following in the oral reasons for

judgment:

> The court then must rely on two things in reaching an opinion: the first is its judgment as to what the medical testimony and records, taken in totality, mean; and, second, and more importantly in this case, the credibility of live testimony.
>
> For that reason, both sides were given wide latitude in letting their witnesses talk and expound at length in order for the court to have an opportunity to gauge and measure their demeanor, their forthrightness, and the consistency of the testimony.
>
> Neither this court nor any other that I am aware of is much taken aback when the doctors from both sides have divergent views and opinions. One expects that. I was impressed, however, with the testimony of the treating physician who was unequivocal and surefooted in his opinion that the maladies afflicting the claimant can be clearly traced to the time when she fell through the open bay landing on her back and hitting her head. Inserting common sense and ordinary experience into the equation, it certainly seems feasible and possible that such an event could, not necessarily did, but certainly could, cause the medical problems alleged by the claimant. She complains of headaches, and pain in her tailbone, low back, elbow, ribcage, leg and ankle pain. The treating physician is positive that her fall did this damage. He expresses no doubt whatsoever. He strongly suggests that more tests be conducted to ensure a complete diagnosis and he urges that physical therapy is essential. He flatly rejects the opinion of the company's choice of physician that an M.R.I. is unnecessary. The treating physician says that Ms. Lemelle is unemployable at this point and needs further treatment.

> I listened to her carefully and at length and noted her responses to some very pointed cross examination. I find the claimant has carried her burden of proof clearly and convincingly . . . .

In rendering these oral reasons for judgment, the WCJ clearly recognized its obligation as the trier of fact and made specific factual findings and credibility determinations. Based on these factual findings and credibility determinations, the WCJ rendered its judgment. Having reviewed the entire record, this court finds no manifest error in the WCJ's factual findings. Therefore, we find no merit in Wal-Mart's first two assignments of error.

### *Penalty and Attorney Fee Issue*

In its final assignment of error, Wal-Mart asserts that the WCJ erred in awarding penalties and attorney fees. "Whether the refusal to pay benefits warrants the imposition of penalties and attorney's fees is a factual question which will not be disturbed in the absence of manifest error." *Dozier v. Garan's, Inc.*, 94-1363, p. 4 (La.App. 3 Cir. 4/5/95), 653 So.2d 137, 139.

The WCJ, in its oral reasons for judgment, stated the following concerning its award:

> [I] am, therefore, ordering the claimant is entitled to an M.R.I. of her knee as recommended, neuropsychiatric testing, the vestibular P.T., and an appointment with Dr. Dean Moore. I'm further awarding all weekly benefits due from August the 30th, 2001 to December 17, 2001; March 17, 2002 to November 23rd of 2002, and November 30, 2002 to the present be paid calculated based upon full-time status of a 40-hour week multiplied by her hourly wage which is $7, or an A.W.W. of $280 and a comp rate of $186.67. Additionally, the court assesses $8,000 in penalties, 2,000 for the denial of the P.T., neuropsychiatric testing, and the neurosurgeon appointment as well as 2,000 for the late and improper payment of weekly benefits along with $8,000 in attorney fees and cost of court, which include Dr. Granger's expert testimony of $750 and a transcript fee of $148.

9

Thus, the WCJ limited the awarded penalties and attorney fees to only four actions by Wal-Mart. In her answer to Wal-Mart's appeal, Mrs. LeMelle did not seek additional penalties, and we are therefore limited in our review to Wal-Mart's assertion that the WCJ erred in awarding penalties and attorney fees. We reject Wal-Mart's assertion.

When Wal-Mart first rejected Dr. Lugo's recommendation of neuropsychiatric testing and the extension of vestibular physical therapy, only Dr. Lugo and Dr. Granger had treated Mrs. LeMelle for her injuries. The doctor made his recommendation concerning the neuropsychological testing within three months of the original injury, and the record contains no basis for Wal-Mart's refusal to approve the testing. Concerning the vestibular rehabilitation, Dr. Lugo recommended its continuation after considering the report and recommendation of the physical therapist. In denying both requests, Wal-Mart relied totally on a physician advisor, through a utilization review process, who did not even examine Mrs. LeMelle.

As stated in *Harrington v. Coastal Construction & Engineering*, 96-681, p. 3 (La.App. 3 Cir. 12/11/96), 685 So.2d 457, 459, *writ denied*, 97-0109 (La. 3/7/97), 689 So.2d 1375, "the employer must rely on competent medical advice *when* the decision to deny the medical treatment is made." The mere production of a different opinion of a doctor who never examined the claimant does not constitute competent medical advice sufficient to reasonably controvert the claim. *Id.*; *see also Phillips v. Diocese of Lafayette*, 03-1241 (La.App. 3 Cir. 3/24/04), 869 So.2d 313. While a utilization review process has its place in the workers' compensation process, this court has consistently held that a long-distance diagnosis by a physician advisor is not an acceptable basis for denial of treatment and benefits. *See id.* In the instant case, the

10

long-distance diagnosis flies in the face of the undisputed findings of the treating physician at a time when Wal-Mart was paying temporary total disability benefits, making Wal-Mart's actions even more egregious. We find no error in the WJC's award of penalties and attorney fees for Wal-Mart's failure to approve the neuropsychological testing and vestibular physical therapy.

Nor do we find error in the WCJ's award of penalties for Wal-Mart's failure to correctly and timely pay weekly benefits. Wal-Mart initially paid Mrs. LeMelle temporary total disability benefits from September 6, 2001, until she returned to work on December 17, 2001, at which time it suspended payments until March 17, 2002. It then paid Mrs. LeMelle temporary total disability benefits until she returned to light-duty work on November 23, 2002. On August 27, 2002, Wal-Mart issued Mrs. LeMelle a $984.96 check as payment of supplemental earnings benefits for the period from December 17, 2001, through March 16, 2002. After Mrs. LeMelle ceased working on November 30, 2002, Wal-Mart never reinstated any type of indemnity benefit.

When an employee sustains an injury that produces temporary total disability, he is entitled to be compensated at the rate of "sixty-six and two-thirds percent of wages during the period of such disability." La.R.S. 23:1221(1)(a). As stated in La.R.S. 23:1021(10), "'[w]ages' means average weekly wage at the time of the accident." Additionally, "[i]f the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, *whichever is greater* . . . ." La.R.S. 23:1021(10)(a)(i) (emphasis added).

11

Wal-Mart does not dispute that Mrs. LeMelle was a full-time employee at the time of the accident. However, it calculated Mrs. LeMelle's average weekly wage ($254.91) and the temporary total disability benefit it paid ($169.95) based on the actual hours worked for the four weeks preceding the accident, and not on a forty-hour work week as required by La.R.S. 23:1021(10)(a)(i). *See also Shortt v. Wal-Mart Stores, Inc.*, 95-978 (La.App. 3 Cir. 1/31/96), 670 So.2d 369 (holding that although Wal-Mart's employee was not employed to work forty hours a week, she was nevertheless classified as a full-time employee and was therefore entitled to the calculation of her average weekly wage based on a forty-hour work week). This occurred despite written demands by Mrs. LeMelle through her attorney. The WCJ properly calculated the weekly temporary total disability benefit ($186.67) utilizing a forty-hour work week and Mrs. LeMelle's $7.00 per hour wage rate. Thus, Wal-Mart continuously underpaid Mrs. LeMelle temporary total disability benefits when it paid her benefits. Given the clear language of La.R.S. 23:1021(10)(a)(i) and the decision contrary to Wal-Mart in *Shortt* under similar facts, we find no error in the WCJ's award of $2,000.00 in penalties for Wal-Mart's miscalculation of benefits and for its failure to timely pay supplemental earnings benefits.

Further, Wal-Mart's refusal to approve an examination by Dr. Moore, standing alone, might have been satisfactory because it occurred after Dr. Dodson issued his opinion. However, when viewed in the context of Wal-Mart's total approach to this claim and the medical opinions of the treating physicians, it simply constitutes one more instance of arbitrary and capricious action on the part of Wal-Mart.

Despite the obvious seriousness of Mrs. LeMelle's accident, Wal-Mart began soon after the accident with what could be described as a conscious attempt to avoid

its obligations to its employee. Other areas that the WCJ could have considered for penalties include Wal-Mart's failure to authorize Dr. Granger's request for continued physical therapy as well as the failure to properly pay mileage expenses. Given the record as a whole, we find no error in the award of penalties and attorney fees for Wal-Mart's action in refusing to authorize Dr. Moore's examination.

### *Mrs. LeMelle's Appeal*

Mrs. LeMelle first seeks an increase in the award of attorney fees by the WCJ. In *McCarroll v. Airport Shuttle, Inc.*, 00-1123 (La. 11/28/00), 773 So.2d 694, the supreme court explained that the amount of the statutory attorney fees rests within the discretion of the WCJ, provided the amount is supported by the record. We find no abuse of discretion in the WCJ's award and reject Mrs. LeMelle's request in this regard.

In her answer, Mrs. LeMelle also seeks an award of additional attorney fees for work performed on appeal. While Mrs. LeMelle was not successful in obtaining relief from the action of the WCJ through her answer to the appeal, she was successful in defending the WCJ's judgment. In such a case, she is entitled to an award of additional attorney fees on appeal. *See Phillips*, 863 So.2d 313. Therefore, we award her an additional $5,000.00 in attorney fees.

### DISPOSITION

For the foregoing reasons, we affirm the judgment of the workers' compensation judge in all respects and award additional attorney fees of $5,000.00 to Elizabeth A. LeMelle. We tax all costs of this appeal to Wal-Mart Stores, Inc.

**AFFIRMED AS AMENDED.**