CONERY, J.,
concurs in part, dissents in part and assigns reasons.
LThe majority convened an en banc hearing and found that the 2009 amendment to the Worker’s Compensation Act, La.R.S. 23:1203.1, applies prospectively only. The statute as amended now requires that, all medical disputes arising after January 1, 2011, be submitted to a medical director. The majority is of the opinion that the statute has a substantive effect and should be applied only prospectively to claims arising after the effective date of the amendment, January 1, 2011, overruling a panel of this court in Cook v. Family Care Services, Inc., 13-108 (La. App. 3 Cir. 8/28/13), 121 So.3d 1274. I respectfully dissent from that ruling.
I concur with the dissents of Judges Pickett, Amy, and Keaty which correctly point out that the particular issue in this case, whether the medical procedure requested on November 22, 2011, was timely authorized,- did not arise until after the amendment became law in January, 2011, hence the statute was correctly applied prospectively by the Worker’s Compensation Judge (WCJ). While I agree on that *464 issue, I write separately to stress that we should not have taken this case en banc and should not have ruled on this issue at all. The majority’s decision was unnecessary to a resolution of the issue under review. Proper exercise of judicial restraint compels us to decide on more narrow grounds, if we 'can do so. Wise v. Bossier 2Parish School Bd., 02-1525 (La.6/27/03), 851 So.2d 1090.
If the defendant timely authorized the medical procedure at issue in this case, there was no “denial,” hence no penalties are owed. Counsel for defendant correctly pointed but and reaffirmed when questioned by this writer in oral argument that the medical procedure in question was in fact approved within the sixty day time limit set out in La.R.S. 23:1201(E)(1). The majority agreed with the timeline, but nonetheless reversed the WCJ and awarded penalties and attorney fees based on an initial “denial” of the procedure by the defendant’s utilization review committee (u. r. committee).
The facts of this case are not in dispute. To briefly recap, on November 22, 2011, Dr. Jindia faxed a request form to Liberty Mutual, Garan’s worker’s compensation insurer, seeking pre-authorization to perform a medical procedure on the claimant, a “radio-frequency facet nerve ablation.” There was no information on the request and no analysis or opinion from Dr. Jindia as to why the test was necessary or how it would medically benefit the claimant. On November 30, Liberty Mutual’s u. r. committee phoned Dr. Jindia and denied the request based on an analysis by the nurse and physician that the procedure requested had not been shown to be necessary by the Doctor. The law is clear that an employer/insurer can reasonably controvert a claim if the employer/insurer “engaged in a nonfrivolous-legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant.” [sic] Pete v. Quality Const. Specialists and Bridgefield Cas. Ins. Co., 09-642 (La. App. 3 Cir. 12/9/09), 25 So.3d 241 (citing Brown v. Texas-La Cartage, Inc., 98-1063, P. 9 (La.12/1/98), 721 So.2d 885, 890). When a medical dispute arises, the statute as amended effective January 1, 2011, now requires that the “aggrieved party,” in this case the claimant |3file an appeal with the OWC • medical director. La.R.S. 12:1203.1. No such appeal to the medical director was filed. The WCJ had issued a previous order on May 2, 2005 in this case ordering defendant to pay all reasonable and necessary medical expenses. After the committee’s “denial,” plaintiff did not file an immediate motion requesting a hearing before the WCJ prior to final approval of the medical procedure.
The record shows that shortly after the u. r. committee’s recommendation to deny the procedure, the claims adjuster/supervisor for defendant, Ms. Dunn, then reviewed the file. The evidence is uncontro-verted that on December 22, 2011, within thirty days of the initial “denial” of the procedure requested, Ms. Dunn overruled the recommendation of the u. r. committee and called the doctor to authorize the procedure. The doctor’s office was closed, so she called again on December 27. Again no answer, so she left a message authorizing the procedure. She sent a follow up fax on January 6, 2012, well within the sixty day time limit set by La.R.S. 23:1201(E)(1), and approved the medical procedure. The doctor performed the procedure and continued to treat the plaintiff, all of which was not in dispute. Plaintiff was not prejudiced in any way by the initial “denial” of the u. r. committee, as the procedure was, in fact, timely authorized and performed.
*465 On February 16, 2012, plaintiff filed his first motion for penalties and attorney fees, claiming that his compensation benefits were terminated without cause, and certain mileage expenses had not been paid timely. No mention was made of the u. r. committee’s initial “denial” of the medical procedure, perhaps because the procedure had in fact been approved on December 22, 27, and January 6.
Defendant filed an exception of improper use of summary procedure. The Exception of Improper Use of Summary Proceeding was granted and the WCJ |4bifurcated the mileage issue. No supervisory writ was filed by plaintiff. Trial on the improper termination of benefits issue was conducted on April 23, 2012 by the WCJ.
At the April 23, 2012 trial, there was a stipulation that weekly benefits were stopped on January 9, 2012 and re-instated on February 9, 2012. No explanation was given by defendant except to admit a mistake was made. The WCJ imposed a $3,000 penalty for improper termination of weekly indemnity benefits calculated pursuant to 23:1201(G), failure to pay in accordance with a judgment. Defendant did not appeal this issue.
Plaintiff appealed, asking this Court to reverse the WCJ on the bifurcation issue. The majority found that issue was moot and I concur. The plaintiff also assigned as error the failure of the WCJ to assess an $8,000 penalty at the April 23, 2012 hearing for improper termination of weekly indemnity benefits pursuant to La.R.S. 23:1201. The majority found that the appeal taken on this issue was not timely. I concur.
The mileage issue was rescheduled as a trial on the merits on July 18, 2012. In the meantime, after plaintiffiappellee had lost on the improper termination of benefits issue, on June 28, 2012, plaintiff filed an amended motion for penalties and attorney fees claiming the medical procedure performed by Dr. Jindia had not been timely authorized. That amended motion was also fixed for hearing as a trial on the merits on July 18, 2012.
At the trial, the WCJ found two medical travel bills were not paid within sixty days of the date of proper submission and awarded $2,000 in a single penalty, since the bills were submitted together, and $3,000 in attorney fees. Defendants did not appeal that ruling. Plaintiff appealed, claiming additional penalties. The majority affirmed the WCJ on that ruling, and I concur.
IsTherefore, the only remaining issue is the question of penalties and attorney fees for the alleged “denial” of the medical procedure recommended by Dr. Jindia. After a full evidentiary hearing, the WCJ denied penalties and attorney fees on this issue, assigning two reasons for his decision. In the first reason, the WCJ found that the procedure mandated by the newly amended statute, La.R.S. 23:2303.1, was not followed. The WCJ held that the claimant failed to file an appeal within fifteen days of the “denial” of the medical procedure with the OWC medical director as now required by the statute. The majority focuses on that portion of the ruling and, incorrectly in my opinion, holds that the statute should be applied prospectively only. Since the underlying worker’s compensation order requiring the defendant to pay ongoing medical expenses had been issued in 2005, the majority held that the claimant had a right to an immediate hearing before the WCJ and need not have submitted the claim to the medical director.
The majority specifically found that La. R.S. 12:1203.1 affects substantive rights and can only be applied to cases original- *466 ing after January 1, 2011. The effect of the majority ruling is that if a case was pending or had been heard by the WCJ before the effective date of the amendment, as in this case, then even a particular medical issue arising after the effective date had to be brought back before the WCJ, not the medical director.
I disagree for the reasons assigned by Judges Pickett, Amy, and Keaty. The particular issue in this case, failure to timely pay for the medical procedure requested by Dr. Jindia on November 22, 2011, occurred after the effective date of the statute, and the wording of the statute is clear that “all disputes” involving failure to provide medical treatment arising after the effective date of the amendment must first be | f,submitted to the medical director.
In this case there was in fact a trial on the merits on the issue of “denial” of medical benefits and the WCJ made factual findings. The majority gave short shrift to the second basis for the WCJ’s ruling issued after he heard all the evidence. The majority did not discuss or apply the manifest error standard to his findings. The WCJ had specifically relied on the testimony of Ms. Dunn and found that the procedure at issue had in fact been timely authorized and that no penalties and attorney fees were owed. The issue of whether La.R.S. 23:1208.1 should be applied prospectively or retrospectively should not have been considered by this court, as there is no underlying “denial” of a medical procedure on which to base a decision. Therefore, in my opinion, there was no need to call an en banc hearing and rule on the prospective/retrospeetive application of the statute, as such a ruling is obiter dictum.
Obiter Dictum has been classically defined as a judge’s opinion on a matter that is not necessarily involved in the case or essential to its determination. Black’s Law DictionaRY (9th ed.2009). It is “a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding.” Spott v. Otis Elevator Co., 601 So.2d 1355 (La.1992). A case should be decided on the narrowest grounds in order to avoid unnecessary obiter dictum. Wise v. Bossier Parish School Bd., 02-1525 (La.6/27/03), 851 So.2d 1090. See also Cat’s Meow, Inc. v. City of New Orleans Through Dept. of Finance, 98-0601 (La.10/20/98), 720 So.2d 1186; Sarnoff v. American Home Products Corp., 798 F.2d 1075 (7th Cir.1986) (Posner, J.).
Had the WCJ refused to conduct a hearing on the merits and/or based his decision only on the issue that the procedure outlined in the amended version of 7La.R.S. 23:1203.1 had not been followed, and then denied penalties and attorney fees on that basis only, the case may then have been ripe for us to consider proper statutory interpretation. However, he did not. The WCJ specifically conducted a full eviden-tiary hearing and found that the medical procedure at issue was timely authorized. He accepted Ms. Dunn’s testimony. This case can and should be decided on the narrow grounds of whether, under the manifest error rule, there was sufficient evidence in the record to support the WCJ’s ruling. Tomasik v. La. State Veterans Affairs Office, 13-451 (La.App. 3 Cir. 11/6/13), 124 So.3d 613; Foster v. Rabalais Masonry, Inc., 01-1394 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, writ denied, 02-1164 (La.6/14/02), 818 So.2d 784. Magbee v. Federal Express, 12-77 (La.App. 3 Cir. 12/12/12), 105 So.3d 1048.
Citing Pete, 25 So.3d 241, and Phillips v. Diocese of Lafayette, 03-1241 (La.App. 3 Cir. 3/24/04), 869 So.2d 313, plaintiff/appel-lee argues that when the employer denies a medical procedure arbitrarily, penalties and attorney fees are owed even if the *467 employer eventually approves the procedure within the sixty day time delay provided by La.R.S. 23:1201(E)(1). He claims the u. r. committee arbitrarily “denied” the claim.
Ms. Dunn’s testimony clearly refuted that conclusion. In fact, the majority actually quoted from Ms. Dunn’s report explaining the u. r. committee’s findings and its reasons:
The report received by Ms. Dunn from the peer-review practitioner stated that after reviewing the criteria and current literature pertaining to the recommended treatment, it reached the following conclusion.
The request is not medically necessary. The claimant does not have physical examination findings consistent with facet originating pain and does not have diagnostic imaging correlating with facet degenerative changes in the records provided. A psychosocial screening has not been provided for review and the claimant’s benefit | ¿from the previous ablation has not been specified. Records do not reflect that lower levels of care, including physical therapy, have been exhausted. Given the above clinical information and guidelines criteria, the request is denied.
Again, no explanation or opinion had accompanied Dr. Jindia’s request to conduct the medical procedure. Even if the adjuster had not immediately approved the procedure, there is a reasonable basis for the initial denial by the u. r. committee established by the evidence.
The undisputed facts of this case are easily distinguishable from Pete and Phillips. In Pete, on June 28, 2006, Pete saw Dr. Michel Heard, who recommended a Lumbar Epidural Steroid Injection (LESI). The adjuster handling the claim denied the request on July 14 with no reasons stated. On August 9, Pete filed a disputed claim for compensation, penalties and attorney fees. The adjuster then reversed her position and approved the treatment after she received the claim.
In affirming the WCJ’s finding that the claim had been arbitrarily denied, a panel of this court stated, “Dr. Heard subsequently recommended two more LESI series that the insurance adjuster treated in the same manner, first denying and then approving the treatment.” Pete, 25 So.3d at 243. As noted by the panel, the WCJ found factually that the denial of the first LESI series was arbitrary and capricious. The panel of this court went on to state in Pete:
As the WCJ explained, no one could fault an adjuster who denied treatment for good cause but, after receiving more information, changed her mind. Noting that the record did not supply a valid reason for the denial and that defendants failed to produce the adjuster at the hearing so as to ascertain whether the denial was warranted, the WCJ concluded that the denial was arbitrary and capricious.
Id. at 244.
In this case, the opposite occurred. The initial request for medical treatment was sent to defendant’s u. r. committee. The committee considered and |9recommended denial of the request based on valid reasons stated. More importantly, the adjuster did timely approve the procedure some six months before the claim was filed.
The majority cites Magbee v. Federal Express, 12-77 (La.App. 3 Cir. 12/12/12), 105 So.3d 1048 (citing LeMelle v. Wal-Mart Stores, Inc., 04-527 (La.App. 3 Cir. 9/29/040, 883 So.2d 526)), for the proposition that the “mere production of a different opinion of a doctor who never examined the claimant does not constitute *468 competent medical advice sufficient to reasonably controvert the claims.” However, an employer/insurer has a continuing duty to assess factual information and re-evaluate its position when warranted. Pete, 25 So.3d 241. Ms. Dunn received and reviewed the u. r. report, pursuant to her responsibility. She then immediately overruled the u. r. panel’s recommendation and timely approved the recommended treatment. The majority even quoted Ms. Dunn’s reasoning in its opinion:
Ms. Dunn testified that less than one month later, on December 22, 2011, she attempted to call Dr. Jindia’s office to inform him that she would approve the treatment. In her December 22, 2011 office note, she stated:
Repeat RFA was denied by preauth— prior RFA done in June and did help clt symptoms and appears reasonable for repeat 1 x a year per my experience with prior SMO on RFA’s. If block helped then RFA is indicated and repeat is indicated and repeat appropriate yearly if relief lasts 6-12 mos. It has been 6 mos however does not appear rx usage decreased and we dont [sic] have specific info on her benefit from the prior ablation. I feel it is prudent to approve the repeat RFA until we can get SMO to comment on the frequency of repeat RFA’s — this is necessary to avoid 1008 until we can have issue properly addressed.
Called the dr. office to approve but they are closed now for the holiday until Tuesday. I will call then and approve auth. [sic]
In addition, unlike the adjuster in Pete, Ms. Dunn appeared at trial and testified, “When I realized U.R. had denied it, I wanted to approve it. So I called.”
h nUnlike the facts in Pete, Magbee, and LeMelle, the WCJ found factually that the treatment had been approved timely within the sixty day time period. And unlike the facts in Pete, the amended motion for penalties for failure to timely authorize the medical procedure in this case was not filed before final approval, but months later, on June 28, 2012, shortly before the July 18, 2012 trial.
At trial, the WCJ relied on Ms. Dunn’s testimony and found factually, “Ms. Dunn subsequently over-road the utilization review opinion and approved the procedure on January 6, 2012, by fax. The approval was received within sixty days.” And again, “Ms. Dunn voluntarily over-road the U.R. determination within sixty days. Accordingly, the claim for a penalty regarding the radio frequency facet nerve ablation is denied.” Under the manifest error rule, his findings must be affirmed unless clearly wrong. Magbee, 105 So.3d 1048; Tomasik, 124 So.3d 613; Foster, 811 So.2d 1160.
Phillips can also be easily distinguished. In Phillips, the defendant denied plaintiffs request for continued psychotherapy on three different occasions, February 5, 2001, February 28, 2001, and July 19, 2001, relying on the utilization review process plus video surveillance calling plaintiffs credibility into question. The defendant never did authorize the treatment until ordered to do so by the WCJ after trial on the merits. The WCJ found that defendant’s refusal was arbitrary and capricious and a panel of the court affirmed, applying the manifest error rule.
Again, just the opposite happened in this case. The WCJ found that even though the u. r. committee recommended denial, Ms. Dunn, the claims supervisor actually responsible for the final decision, timely approved the procedure within the statutory sixty day time period, and long before the motion for penalties and attorney fees was filed on June 28, 2012.
*469 lnFaced with the uncontroverted facts that the majority itself cited in its opinion, the majority then found “that Garan failed to reasonably controvert Dr. Jindia’s request for the radiofrequency facet-nerve ablation prior to denying approval.” Respectfully, the majority failed to properly take into account that there was a full trial on the merits of this particular issue, and that the WCJ made factual findings and accepted Ms. Dunn’s testimony. The majority failed to appropriately apply the manifest error rule to the WCJ’s findings. Magbee, 105 So.3d 1048; Tomasik, 124 So.3d 613; Foster, 811 So.2d 1160. The WCJ’s opinion on this issue should be affirmed.
CONCLUSION
In my view, this is not the type of case where we should convene an en banc panel and issue a far reaching opinion “overruling” a panel of this court on the important issue of whether La.R.S. 23:1203.1 should be applied prospectively or retrospectively.
Proper exercise of judicial restraint is warranted. There is no need to rule on or discuss the statutory interpretation of La. R.S. 23:1203.1. The case can and should be decided on narrow grounds and affirmed under the manifest error rule. Magbee, 105 So.3d 1048; Tomasik, 124 So.3d 613; Foster, 811 So.2d 1160; see also Wise, 851 So.2d 1090. In this ease, there is no dispute about the facts. The WCJ correctly applied the law to the facts and his decision should be affirmed in all respects.