STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

20-386

BEATRICE JOSEPH

VERSUS

IBERIA PARISH SCHOOL DISTRICT

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 9
PARISH OF IBERIA, NO. 18-08685
ELIZABETH C. LANIER, WORKERS' COMPENSATION JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of John D. Saunders, Phyllis M. Keaty, and John E. Conery, Judges.

AFFIRMED.

**Brent Michael Steier**
**Simien & Simien, L.L.C.**
**7908 Wrenwood Boulevard**
**Baton Rouge, Louisiana  70809**
**(225) 932-9221**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Beatrice Joseph**


**William S. Bordelon**
**The Law Offices of Williams S. Bordelon**
**407 Roussell Street**
**Houma, Louisiana  70360**
**(985) 851-4241**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Iberia Parish School District**

**CONERY, Judge.**

Claimant Beatrice Joseph, a school bus driver for the Iberia Parish School Board, alleged that she sustained shoulder, back, and right knee injuries after a car backed into her school bus. After initially seeking treatment on referral from the School Board, she began treatment with an orthopedic surgeon of her own choosing. The School Board challenged the causation of any such condition, pointing to the minimal nature of the accident and Ms. Joseph's underlying osteoarthritis. It further countered Ms. Joseph's claim for indemnity, medical benefits, penalties, and attorney fees with an affirmative defense of fraud. Following a hearing, the workers' compensation judge (WCJ) found in favor of the School Board. Ms. Joseph appeals. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

The underlying work-related accident in this workers' compensation proceeding occurred on September 6, 2018 when a sports utility vehicle backed into the side of the school bus driven by Ms. Joseph. The New Iberia Police Officer responding to the collision indicated in his report that he observed "very minor damage to both vehicles."

At trial, Ms. Joseph explained that she felt no pain at the time of the accident and was able to finish her route, but that she began to experience pain in her knee and shoulder later that evening. Due to the accident, the School Board sent her the following day to Teche Occupational Medicine Clinic, where she was seen by Harold Broussard, a Physician Assistant, Certified (PAC). Mr. Broussard's report from that September 7, 2018 visit indicates that Ms. Joseph described "some generalized stiffness mainly of the upper back and neck area, mostly on the right side … She also complains of some right knee stiffness and pain." Regarding the

issue in this case, Ms. Joseph's pre-existing knee condition, Mr. Broussard reported that Ms. Joseph "does have a history of arthritis of both knees but she states they had been doing well in the last month or so."

Mr. Broussard's report and the findings of an x-ray taken on that date of Ms. Joseph's right knee were reviewed and approved by Dr. Douglas Bernard, an orthopedic surgeon and Mr. Broussard's partner in Teche Occupational Medicine Clinic. Dr. Bernard explained that the x-ray revealed "spurs and cystic changes in the bone which take years and years to develop" and "end-stage arthrosis, or osteoarthritis of the knee." He noted that "it doesn't get any worse than this." The x-ray, according to Dr. Bernard, demonstrated no "acute findings," but showed "moderate to severe degenerative joint disease with complete collapse of the medial compartment." Referring to the report of the September 7, 2018 visit, Dr. Bernard explained that no edema or effusion around the joint, *i.e.*, swelling, was observed. The report lists diagnoses of: "1) Strain of the right upper trapezius muscle[;] 2) Strain of the right knee[;] and 3) Degenerative arthritis of the right knee."

Ms. Joseph continued to work following the initial visit but returned to Teche Occupational Medicine Clinic on September 11, 2018 for a "recheck" of the alleged injury. The report, again signed by Mr. Broussard and Dr. Bernard, indicated that Ms. Joseph stated, "that the pains have become worse especially in the right knee, which is quite severe" and that she was having "difficulty ambulating because of the pain in the right knee." She also continued to complain of "pain in the right shoulder, right upper trapezius muscle, and the low back area mostly on the left side without any complaints of radiation of pain." On exam, Mr. Broussard noted Ms. Joseph to have "marked pain the right knee with any attempted motion" and "pain to palpation of the whole right knee[,]" which she commented was "worse on the medial side."

Mr. Broussard diagnosed Ms. Joseph as continuing to suffer strain of the right upper trapezius muscle and right shoulder, strain of the right knee, and "[p]re-existing degenerative arthritis of the right knee, severe." He deferred further x-ray or exam, but instead referred Ms. Joseph to an orthopedist. The report, again signed by both Mr. Broussard and Dr. Bernard, indicated that Ms. Joseph was unable to work at that time, "as we feel that it would be unsafe for her to drive a school bus."

Ms. Joseph chose Dr. Seth Rosenzweig as her choice of treating orthopedic surgeon, first visiting him on September 17, 2018. Dr. Rosenzweig reported that Ms. Joseph's main reason for evaluation was "pain, swelling and an injury with tingling in the right knee which has been present for two weeks." She also complained of "pain with limited range of motion in her right shoulder." Ms. Joseph explained that she had "jammed her right leg into the b[ra]kes and twisted her body while holding the steering wheel to look behind her during the collision." She stated to him that "by the next morning [she] could barely put any weight on her right leg." The School Board points out that Dr. Rosenzweig further explained that: "She has never had right knee pain before or treatments in the past." This reporting was contrary to the Teche Occupational Medicine Clinic's records indicating "a history of arthritis of both knees" but that she stated, "they had been doing well in the last month or so."

While the "physical exam" portion of Dr. Rosenzweig's September 17, 2018 report included findings from exams to the right and left shoulders, it did not specifically indicate that an exam was performed of the right knee. Dr. Rosenzweig did order x-rays of the knees. His "impression" of the knee included "right knee injury," "right knee post-traumatic osteoarthritis," "right knee synovitis," and "right knee effusion[.]"

3

Dr. Rosenzweig's report included his plan of treatment and indicated that "[r]ealistically," Ms. Joseph had "end-stage arthrosis of the right knee" which was "aggravated" by pressing the school bus's brake at the time of the collision. He stated that he would like for Ms. Joseph to receive "some therapy for the shoulder in [sic] the knee and we injected[1] both today."

Following that visit, Gulf South Risk Services, the Third Party Administrator handling the School Board's workers' compensation claims, requested that Dr. Bernard review the Teche Occupational Medicine Clinic's reports from the initial September 7 and 11, 2018 exams, along with a video of the bus's camera and Dr. Rosenzweig's report from his September 17, 2018 exam.

Dr. Bernard's September 24, 2018 correspondence, entered as a defense exhibit at the workers' compensation hearing, indicates the following interpretation of the materials:

> I thoroughly reviewed the videos. At the time of the impact Ms. Joseph had slowed down to a near complete stop before the impact and was making a left turn. The bus came to a complete stop and did not appear to move at all at the time of the impact. Ms. Joseph did not appear to strain anything, including her right shoulder, her right knee or lower back at the time of impact. There was no unusual movement of the seat when comparing it to normal driving.
>
> The only x-rays taken at our office were of the right knee, AP and lateral. Ms. Joseph has complete collapse of the medial compartment with bone on bone apposition, which is longstanding and pre-existing degenerative joint disease.
>
> There is no evidence when thoroughly reviewing the videos repeatedly that Ms. Joseph suffered any significant injury at all that would cause, exacerbate or aggravate her pre-existing condition. There is no evidence what so ever when reviewing the video that Ms. Joseph suffered any other injuries.
>
> With regards to Dr. Seth Rosenzweig's report dated 09/17/18, his impression was a right knee injury, right knee post-traumatic

---

[1] The notes indicate that the knee and shoulder were injected with Kenalog, a steroid.

osteoarthritis, right knee synovitis, right knee effusion, right shoulder injury, right shoulder impingement syndromes, right shoulder contusion hematoma, right shoulder bursitis. Her examination of the right shoulder was reported as normal.

With regard to the right knee, it is definitely pre-existing. There is no evidence on her visits at Teche Occupational Medicine Clinic that she had any ecchymosis, bruising or swelling.

Again, there is just no evidence on the videos that Ms. Joseph suffered any injury what so ever. According to the events in the videos, this was a very minor accident, which would not have caused any of the complaints she is having today.

Based on the school bus video and Dr. Bernard's review, Gulf South denied the request for additional treatment with Dr. Rosenzweig. Ms. Joseph continued to seek treatment from Dr. Rosenzweig, however. His notes from her October 9, 2018 visit[2] reflect that Ms. Joseph continued to report pain and that, in addition to her shoulder complaint, "[s]he also has a end-stage arthrosis of the knee now [sic] has an active synovitis." She also complained of "new onset lower back pain[.]"

At her October 30, 2018 exam, Ms. Joseph stated that she continued to have intermittent pain. Raising the issue of compensability, Dr. Rosenzweig reported:

> My understanding is that the right shoulder, left buttock and lower back, and right knee, were all new onset complaints after the MVC involving her bus. While she does have underlying osteoarthrosis of the right knee with an acute bout of synovitis, this was not symptomatic before her collision. Her right shoulder was not symptomatic before the collision neither was her lower buttock pain going into the leg. I think this far as workup wise we do need an MRI of the right shoulder, and we do need a lumbar films [sic] as well as possible MRI. Her right knee is feeling better, and she would like to try and dry [sic], but I do think eventually she will need a knee replacement. She is currently using anti-inflammatory and we'll wait until we have some more information before we return her to full duty on the bus. A work note was created. She will be off work until next appointment.

---

[2] The office notes indicate that the claim was "being investigated through work comp" and that she was filing the claim "under her commercial insurance[.]"

Dr. Rosenzweig next saw Ms. Joseph on November 14, 2018, when she presented for a reevaluation and a "rehabilitation conference." At the conference that followed her exam, Dr. Rosenzweig and Ms. Joseph were joined by Ms. Joseph's attorney and Keith Kenney, an adjuster for Gulf South. Dr. Rosenzweig described the conference in his report, stating:

> I agree that the right knee is a contusion on top of underlying arthrosis. They did show me video which makes me think the shoulder most likely was not affected at the time or the lower back. There was really minimal jolts or impact that I could observe. I still think she would benefit from 4 weeks of physical therapy and possibly even a hyaluronic acid series. Return to work starting next week. A work note was created. She will return to work with no restriction as of 11/26/2018.

Mr. Kenney testified at the compensation hearing regarding the rehabilitation conference as well as the denial of the claim. He stated that Dr. Rosenzweig explained that Ms. Joseph could not have injured her neck, shoulder, or back after viewing the film. Mr. Kenney explained to the WCJ that Dr. Rosenzweig "said the same" about both the injury to her shoulder and back. When asked about Ms. Joseph's right knee, Mr. Kenney explained that, "[Dr. Rosenzweig] said that he couldn't comment on the knee because he couldn't see the actions of the knee in the video, and that he would have to rely on the witness' - - I mean, the patient's explanation of what happened."

Mr. Kenney remarked that, upon his own view of the video, he found that it only showed "at best" a "very minor impact," thus causing him to question "whether or not that could produce any injuries." The School Board accordingly denied additional medical and indemnity benefits.

Ms. Joseph instituted this matter in December 2018, seeking indemnity benefits and medical expenses associated with Dr. Rosenzweig's recommendation

for further treatment. Ms. Joseph also sought penalties and attorney fees associated with the School Board's denial of benefits. The School Board answered the claim, filing its affirmative defenses of fraud under La.R.S. 23:1208 and 23:1208.1.[3] Its claim under the latter statute, however, was dismissed at the time of the hearing.

The matter proceeded to a December 2019 hearing, with the parties stipulating as to the occurrence of the September 6, 2018 motor vehicle accident and its occurrence within the course and scope of Ms. Joseph's employment. They also stipulated as to the applicable average weekly wage and the resulting indemnity benefits, if any. Ms. Joseph's attorney argued that the issue presented was whether Ms. Joseph "suffered an aggravation of a pre-existing but an asymptomatic condition of her right knee as a result" of the accident. Ms. Joseph sought reimbursement for fees paid for the visits with Dr. Rosenzweig on October 9 and 30, 2018. She further sought indemnity for the contested period.

In support of her burden of proof, Ms. Joseph presented her account of the accident and described both her pre-existing knee condition and the purported aggravation of that condition. She explained to the judge that, before the accident, she had no back or neck pain, but had experienced prior right knee pain. When asked about Dr. Rosenzweig's notes indicating that her right knee had been asymptomatic before the accident, Ms. Joseph explained that she had never denied it to him. Ms.

---

[3] The School Board asserted in its Answer that:

Claimant alleged injury to her neck, right shoulder, and right knee. However, Dr. Douglas Bernard, MD and Dr. Seth Rosenzweig, MD, after seeing the video of the alleged accident, both stated that Claimant could not have received any injury to her neck or shoulder from the incident. Dr. Bernard further stated that the knee injury of Claimant was pre-existing and could not have been aggravated by the incident. Dr. Rosenzweig stated that he could not see the function of the leg in the video at the time of the accident, and thus he had to rely on the history of Claimant.

Joseph presented no medical testimony in support of her case but introduced her medical records from Dr. Rosenzweig. In opposition, the School Board presented the testimony of Dr. Bernard and Mr. Kenney. It also presented, among other items of correspondence and diagnostic testing, video footage of the bus accident and medical records of Dr. Rosenzweig and those of Teche Occupational Medicine Clinic.

The WCJ rendered written reasons in ruling in favor of the School Board, finding that Ms. Joseph failed to meet her burden of proving that she suffered any injury or any aggravation of a pre-existing condition of her right knee in the work-related accident. The WCJ observed that Ms. Joseph was a "poor historian" in her account of the incident and that the misinformation rendered Dr. Rosenzweig's conclusions to be unreliable. The WCJ further denied the School Board's fraud defense.

Ms. Joseph appeals, questioning the determination that she did not meet her burden of proving a work-related injury and, in turn, a disability from working.

## LAW AND DISCUSSION

*Burden of Proof*

A claimant seeking workers' compensation benefits must prove, by a preponderance of the evidence, that he or she received personal injury due to an accident that arose out of the and in the course of his or her employment. *Marange v. Custom Metal Fabricators, Inc.*, 11-2678 (La. 7/2/12), 93 So.3d 1253. *See also* La.R.S. 23:1031(A); *Bruno v. Harbert Int'l Inc.*, 91-1444 (La. 1/17/92), 593 So.2d 357. On review, an appellate court considers a WCJ's factual findings, including assessments of credibility and whether a claimant has satisfied the burden of proof, pursuant to the manifest error standard. *Lafayette Bone & Joint Clinic v. Louisiana*

*United Bus.*, 15-2137 (La. 6/29/16), 194 So.3d 1112. "[T]herefore, in order for a reviewing court to reverse an OWC judge's factual findings, it must find that a reasonable factual basis does not exist and the record establishes that the factual findings are clearly wrong." *Id.* at 1124. Following such review, we affirm the WCJ's ruling.

*Causation of Right Knee Pain*

Although initially Ms. Joseph sought recovery for injuries to her back and shoulder as well, she focused her attention at the hearing on her right knee. In her appellant's brief, she focuses exclusively on the right knee, asserting that her account of symptoms following the accident and Dr. Rosenzweig's report required a finding of causation. She refers to jurisprudence indicating that "[a]n employer takes his employee as he finds him and an employee's disability is compensable when a non-disabling preexisting condition is activated or precipitated into a disabling manifestation as a result of injury." *Quoting Lucius v. H.B. Zachry Co.*, 95-1667, p. 5 (La.App. 3 Cir. 5/8/96), 673 So.2d 1357, 1360.

Given the lack of dispute regarding the occurrence of the work-related accident as well as her pre-existing arthritic knee condition, Ms. Joseph suggests that the WCJ should have accepted her testimony that the right knee condition "was asymptomatic for quite some time before the work accident in question, but became symptomatic shortly after the work accident in question, caused, she believes, by her pressing her right leg down on the brake at the time of the accident." She points out the absence of any medical record indicating recent treatment on the knee. She argues, instead, that the only "dispute of the right knee injury was based upon the low impact nature of the accident, as interpreted by the claims adjuster who is not an expert and was not offered as an expert, and the medical opinion of Dr. Bernard[.]"

9

She contends that, although Dr. Bernard was accepted as an expert in the field of orthopedic surgery, any opinion offered by him as to causation must be disregarded as he was not qualified as an expert in that area.

Ms. Joseph continues and observes that, with regard to Dr. Bernard's testimony, La.R.S. 23:1317(A) requires all findings of fact to be based on competent evidence.[4]  She cites jurisprudence for the proposition that "a medical opinion when no examination of the claimant was performed is not competent evidence" and should not be relied upon.  *Citing LeMelle v. Wal-Mart Stores, Inc.*, 04-527 (La.App. 3 Cir. 9/29/04), 883 So.2d 526; *Phillips v. Diocese of Lafayette*, 03-1241 (La.App. 3 Cir. 3/24/04), 869 So.2d 313; *Magbee v. Federal Express*, 12-77 (La.App. 3 Cir. 12/12/02), 105 So.3d 1048; *Harrington v. Coastal Constr. & Eng'g*, 96-681 (La.App. 3 Cir. 12/11/96), 685 So.2d 457, *writ denied*, 97-109 (La. 3/7/97), 689 So.2d 1375. She thus contends that any reliance on Dr. Bernard's opinion regarding whether she could have aggravated her knee condition constituted legal error and contrary to "common sense."

On this latter point, Ms. Joseph contends that there was no indication that she was not in good health before the bus accident and that the "right knee aggravation injury manifested itself and continuously manifested itself within a relatively short time (i.e. the same day as the accident)."  She thus argues that the WCJ should have

---

[4] Louisiana Revised Statutes 23:1317(A) (emphasis added) provides that at the hearing on the merits of the workers' compensation claim:

> The workers' compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided, but *all findings of fact must be based upon competent evidence* and all compensation payments provided for in this Chapter shall mean and be defined to be for only such injuries as are proven by competent evidence, or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself.

applied the presumption of causation with regard to her knee complaints, citing *Rideaux v. Kohl's Department Stores, Inc.*, 11-914 (La.App. 3 Cir. 12/7/11), 80 So.2d 703 and *Moore v. Pitt Grill*, 03-910 (La.App. 3 Cir. 3/24/04), 871 So.2d 1128.

Ms. Joseph's argument, however, misconstrues the WCJ's findings and the fact that it was Ms. Joseph's burden to prove injury and causation, rather than the School Board's role to disprove them. Ms. Joseph presented no medical testimony at the hearing nor did any of the medical records submitted by either party establish that her complaints of knee pain were caused by the bus accident. Rather, Ms. Joseph alone testified that she had not experienced right knee pain for approximately fifteen years before the accident and that it became symptomatic on the evening of the September 6, 2018 bus accident.

As Ms. Joseph suggests, jurisprudence indicates that a claimant's testimony, alone, *may* be sufficient to satisfy his or her burden of proving a physical injury arising out of and in the course of a work-related accident as required by La.R.S. 23:1031(A). *See Rideaux*, 80 So.3d 703 (quoting *Bruno*, 593 So.2d at 361). Critically, the supreme court has explained that such testimony may be sufficient "*provided two elements are satisfied*: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." *Bruno*, 593 So.2d at 361 (emphasis added). Such corroboration may be in the form of "testimony of fellow workers, spouses or friends" and "may also be provided by medical evidence." *Id.*

11

In contrast to those required elements, the WCJ specifically rejected Ms. Joseph's unsubstantiated version of events, stating:

> This Court found the plaintiff to be a poor historian of events. This Court finds the plaintiff's recollection of events did not match the video evidence DX-2. This Court finds due to the plaintiff being a poor historian she gave misinformation to her treating physician which rendered his medical conclusions to be inaccurate. See her treating physician's medical report DX-9 dated 10-30-18 where Dr. Rosenzweig relied on plaintiff's rendition of events to draw his conclusion.

While Ms. Joseph acknowledged that she had pre-existing arthritis in both knees, she contended at the hearing that she had not experienced right knee pain for approximately fifteen years before the accident and that she had onset of pain following the accident. Ms. Joseph expressed the lack of symptoms prior to the accident, and the onset of pain thereafter, to both Mr. Broussard at Teche Occupational Medical Clinic and to Dr. Rosenzweig, as reflected by their records. Yet, Mr. Broussard's report indicated that Ms. Joseph reported that her knees were doing well "in the last month or so[,]" rather than the fifteen years she indicated at the hearing.

The WCJ rejected her testimony, finding Ms. Joseph to be a "poor historian" who provided "misinformation" regarding the accident to Dr. Rosenzweig. That credibility determination was squarely in the province of the WCJ. *Marange*, 93 So.3d 1253. It also distinguishes the present case from *Rideaux*, 80 So.3d 703, one of the cases relied on by Ms. Joseph.

The WCJ in *Rideaux* found the claimant's version of events credible despite discrepancies—described as minor—between the claimant's account of the accident and an accident report generated by the employer. The appellate panel explained that, "After review of the entire record before us, we cannot say that the WCJ

manifestly erred in finding that Rideaux sustained an injury-producing accident while working at Kohl's. The WCJ obviously found Rideaux to be a credible witness, and we will not second guess that credibility determination." *Id.* at 711. In contrast, the WCJ in this case found Ms. Joseph's account *inconsistent* with the video of the bus accident, video footage introduced as D-2 and reviewed by the WCJ.

That credibility determination also distinguishes this matter from *Moore*, 871 So.2d at 1135, another case advanced by Ms. Joseph, where the appellate panel applying the presumption of causation explained that:

> [The] presumption is conditional upon either the existence of sufficient medical evidence showing that there is a reasonable causal connection between the accident and the disabling condition, or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience that such a causal connection exists.

In addition to Ms. Joseph's account of the accident as the causative factor in her complaints, the WCJ also rejected Ms. Joseph's testimony indicating that her right knee was asymptomatic before the accident. The trial court referenced Dr. Bernard's observation that Ms. Joseph had a "complete collapse of the medial (sic) compartment with bone on bone opposition which is a longstanding and pre-existing joint disease." When asked at the hearing whether it was "possible for someone with a knee that looks like Ms. Joseph's to have been asymptomatic before this accident," Dr. Bernard explained:

> I would doubt it seriously. They can go for periods where it's not as bad as it is. But when you are walking bone-on-bone, every step you make, you're going to feel it. Going up and down steps, things of that nature, will cause you to have pain in the knee.

With regard to Dr. Bernard, Ms. Joseph advances jurisprudence in support of her argument that Dr. Bernard's opinion should not have been relied upon as he did not personally examine her. *Citing LeMelle*, 883 So.2d 526; *Phillips*, 869 So.2d 313;

13

*Magbee*, 105 So.3d 1048; and *Harrington*, 685 So.2d 457. Each of those cases, however, indicates that each involved the question of whether an employer reasonably controverted a workers' compensation claim by reliance on a physician who never examined the claimant in the face of other medical evidence. For example, in *Lemelle*, 883 So.2d at 533, the panel explained that, in the case before it, "the long-distance diagnosis flies in the face of the undisputed findings of the treating physician at a time when Wal-Mart was paying temporary total disability benefits, making Wal-Mart's actions even more egregious."

Dr. Bernard's review and resulting testimony are not equivalent to the remarked upon cursory review described in *Lemelle*. First, Ms. Joseph's case was marked by a paucity of supporting medical evidence. The reports to her medical providers were based on her complaint of onset of pain at the time of the accident. The WCJ rejected that account and, accordingly, found that Ms. Joseph did not meet her initial burden of proof. The School Board presented Dr. Bernard in its defense; a defense rendered unnecessary by the WCJ's rejection of Ms. Joseph's testimony.

Further, and despite that distinction, Dr. Bernard did not offer the type of arms-length medical review described in the jurisprudence cited by Ms. Joseph. Dr. Bernard, an expert in orthopedic surgery, explained that Ms. Joseph had been a patient of his clinic, Teche Occupational Medicine Clinic, for a number of years. He reviewed all of Ms. Joseph's records and exams, as she was personally examined by his partner, Mr. Broussard, PAC, and that she had previously reported pain and swelling in her knees during a pre-accident physical required by her employment as a bus driver. Given his expertise as well as his familiarity with both Ms. Joseph's record and the video of the accident, he was able to provide the WCJ with context

14

for Ms. Joseph's account of her pre-existing condition and those complaints that followed the accident.

In sum, the record supports the WCJ's determination that Ms. Joseph failed to sustain her burden of proving that she sustained compensable injury due to a work-related accident as required by La.R.S. 23:1031(A). Ms. Joseph offered only her own testimony regarding her pre-and-post accident complaints which were permissibly rejected following review of medical records, medical testimony, and consideration of video footage of the accident.

## DECREE

For the foregoing reasons, the workers' compensation judgment is affirmed. Costs of this appeal are assigned to the claimant/appellant, Beatrice Joseph.

**AFFIRMED.**